**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
_____

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

                                                          **Civil Action No. 18-cv-00562 LJV**

                          **Plaintiff,**

**v.**

**STAFFING SOLUTIONS OF WNY, INC.,**

                          **Defendant.**
_____

### SECOND AMENDED AFFIRMATION OF GINGER D. SCHRÖDER

**GINGER D. SCHRÖDER, ESQ.,** under penalty of perjury, affirms and states:

1.      I am a partner in the law firm of Schröder, Joseph & Associates, LLP, attorneys for Defendant Staffing Solutions of WNY, Inc. ("Staffing Solutions").  I make this Second Amended Affirmation based on my personal knowledge and in support of Staffing Solutions' motion to dismiss so much of the Equal Employment Opportunity Commissions ("EEOC's") First through Fourth Causes of Action which impermissibly include untimely claims on behalf of unidentified "aggrieved persons."

2.      Attached hereto is Exhibit A is a true and correct copy of the Complaint filed by the EEOC in this action.

3.      Attached hereto as Exhibit B is a true and correct copy of the Charge filed by Tammi Iser on November 10, 2015 and referenced in paragraph 7 of the Complaint.

4.      The EEOC conducted an extensive investigation of Ms. Iser's charges.  This investigation included, among other things, the issuance of a request for information, including requests for the production of electronic databases, as well as an agreement to permit the EEOC's consultant to engage in a forensic imaging of Staffing Solutions' electronic media, as

well as three to five EEOC staff members spending several weeks in and out of our law offices

reviewing dozens of banker boxes of documents.

5.    On November 7, 2017, the EEOC issued a Notice of Determination.  The Notice

of Determination alleged that Staffing Solutions had engaged in discrimination based on race,

sex and pregnancy in violation of Title VII, discrimination based on age in violation of the Age

Discrimination in Employment Act ("ADEA") and discrimination based on disability in

violation of the American's With Disabilities Act ("ADA").  A copy of the Notice of

Determination is attached hereto as Exhibit C.

6.    Despite this extensive review of both Staffing Solutions' paper and electronic

files the Notice of Determination did not identify any individuals, other than Ms. Iser, who had

been subjected to any alleged acts of discrimination or retaliation.

7.    Similarly, the Complaint, while stating that the EEOC is seeking redress on behalf

of "aggrieved persons," does not identify any specific individual, other than Ms. Iser.  See

Exhibit A, Wherefore Clause.

8.    As set forth in the accompanying memorandum of law, the EEOC is limited to

seeking redress for acts of discrimination and/or retaliation which occurred within 300 days of

Ms. Iser's Charge.

9.    The Charge was filed on November 10, 2015.   See Exhibit B.

10.    January 14, 2015 is the 300th day prior to November 10, 2015.

11.    The EEOC has included in its Complaint claims of discrimination and/or

retaliation which occurred **since at least January 1, 2014** – which is more than 300 days prior to

the filing of Ms. Iser's Charge.  See Exhibit A, Comp. ¶¶ 21, 22, 23 and Wherefore Clause (Title

VII Claims); Comp. ¶¶ 34-36 (ADEA Claims); Comp. ¶¶ 37-42 (ADA Claims); Comp. ¶¶ 45-49

(Retaliation).

      12.      As set forth in the accompanying memorandum of law, it is respectfully submitted

that Staffing Solutions is entitled to dismissal of the EEOC's First through Fourth Causes of

Action.

Dated: July 27, 2018
       Buffalo, New York

                            s/ Ginger D. Schröder
                            Ginger D. Schröder

*Exhibit A*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN NEW YORK
BUFFALO DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:18-cv-00562 |
| v. | ) ) | COMPLAINT |
| STAFFING SOLUTIONS OF WNY, INC. | ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"); Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination in Employment Act ("ADEA"); and Title I of the Civil Rights Act of 1991, to correct a host of unlawful employment practices on the basis of race, sex, disability, age, and retaliation, and to provide appropriate relief to Charging Party Tammi Iser and aggrieved applicants and employees who were adversely affected by such practices.

As alleged with greater particularity below, Defendant, Staffing Solutions of WNY, Inc.—a staffing agency that hires and places employees with clients in Western New York— has violated and continues to violate Title VII by failing to hire Black applicants, or by failing to hire Black applicants for positions it deems "White," or by failing to hire Black applicants for certain clients who express a preference for White applicants. Defendant also hires men or women only for specific positions because of client requests or because Defendant determines those positions should go to one sex or another. Defendant thereby segregates its applicants and employees by sex and race.

Defendant also has violated and continues to violate Title VII by failing to hire applicants and terminating employees who have interracial romantic or social relationships.

Defendant also has violated and continues to violate Title VII by failing to hire pregnant applicants and by terminating employees who become pregnant. Defendant has violated and continues to violate the ADEA by failing to hire applicants age 50 or over.

Defendant also has violated and continues to violate the ADA by failing to hire and failing to accommodate applicants or former employees who are actually disabled or whom Defendant regarded as disabled, including applicants who have been injured, have cancer, have filed a workers' compensation claim, and who test positive for prescribed medications. Defendant further violates the ADA by subjecting applicants to medical inquiries (including questions about injuries and illnesses) and storing medical information on application materials and in non-medical employment and applicant files.

Defendant has violated and continues to violate Title VII, ADEA, and ADA record-keeping requirements by shredding or otherwise destroying application materials, often immediately after an applicant is rejected for discriminatory reasons, and by destroying records of rejected applicants after receiving Charging Party's charge of discrimination.

Finally, Defendant has violated and continues to violate Title VII, the ADEA, and the ADA by engaging in retaliation, including by constructively discharging Charging Party for opposing many of the practices described above, and by discharging other employees who complain about discrimination.

2

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343 and 1345.  This action is authorized and instituted pursuant to: Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title

VII"); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; Section 7(b) of the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"),

which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act

of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217; Section 107(a) of the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964.

2.      The employment practices alleged to be unlawful were and are now being

committed within the jurisdiction of the United States District Court for the District of Western

New York.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is

the agency of the United States of America charged with the administration, interpretation and

enforcement of Title VII, Title I of the ADA, and the ADEA.  The Commission is expressly

authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-

5(f)(1); by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference

Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3); and by Section 7(b) of

the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978,

92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4.      At all relevant times, Defendant, Staffing Solutions of WNY, Inc., a New York

corporation, has continuously been doing business in the State of New York and the City of

3

Buffalo, and has continuously had at least 20 employees, which is sufficient for coverage under Title VII, the ADA and the ADEA.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under: Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h); Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5) and (7); and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Tammi Iser filed a charge with the Commission alleging violations of Title VII, the ADEA, and the ADA by Defendant.

8.      On November 7, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII, the ADEA, and the ADA were violated with respect to Charging Party and other aggrieved individuals, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.     On December 4, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13.     Kathleen Faulhaber started Defendant in 2010 and has owned Defendant and served as its CEO since then.

14.     Defendant hires and places employees at clients in various, primarily unskilled, light industrial, clerical, and warehouse positions in Western New York.

15.     Defendant pays the wages, workers' compensation insurance costs, and unemployment insurance contributions for everyone it hires, and represents to applicants whom it hires that Defendant is their employer.

16.     Defendant often hires and places applicants months after they apply.

17.     Faulhaber and Defendant's recruiters and other office staff (collectively "recruiters"), screen and interview applicants at its Buffalo office.

18.     Charging Party served as Defendant's office manager from October 21, 2013 through September 16, 2015.

19.     Defendant describes applicants whom it does not hire and determines never to hire in the future as "closed," and follows certain procedures to ensure that "closed" applicants are not hired in the future, including the creation of red "closed" Microsoft Outlook records that inform Defendant's recruiters that applicants are not to be hired.

20.     Defendant does not tell rejected and "closed" applicants that they have been rejected and closed. Instead, Defendant generally tells such applicants, both initially and if they subsequently follow up with Defendant, that there are no available placements but that Defendant will contact them if a placement becomes available.

5

## TITLE VII CLAIMS

### RACE

21.    Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by failing to hire Black applicants at all or for placements with certain clients and in particular positions. For example:

   a.    Faulhaber refers to Black applicants and/or Black people generally using the word "nigger" and has characterized certain White people as "nigger lovers."

   b.    Faulhaber rejects and closes Blacks applicants and instructs recruiters to do so even when recruiters deem Black applicants qualified and want to hire them. On occasions, Faulhaber has explicitly stated that she is doing so because the applicants are Black.

   c.    For example, on one occasion, Faulhaber instructed a recruiter not to hire a candidate because he was a "big Black guy." On another occasion Faulhaber instructed a recruiter not to hire an applicant because he was a "big Black nigger."

   d.    And on another occasion, Faulhaber explicitly rejected an applicant because he was Black and had dreadlocks.

   e.    Defendant conducts shorter interviews of some Black applicants because they are going to be immediately rejected and closed.

   f.    Black applicants who are qualified and have work experience relevant to the jobs Defendant posts or is hiring for are rejected and closed.

   g.    For example, Defendant rejected an applicant seeking office or customer

6

service work who had experience as a sales associate, a collections agent, a lottery agent, in bank and pharmacy customer service, and in check cashing. This applicant's interview was short and Defendant told her there was nothing available for her, both at her interview and when she called regularly for months afterwards.

h.    As another example, an applicant applied in response to Defendant's online posting for nursing-home work. This applicant had worked in nursing homes previously, but was repeatedly told that Defendant did not have an available placement for her.

i.    For those Black applicants who are hired, Defendant ensures that they are placed with certain clients and not others.

j.    Defendant generally does not hire Black applicants for positions with clients in primarily White suburban areas, which often pay more than other placements. Instead, Black applicants are sent to placements in predominantly Black neighborhoods and/or that entail work deemed by Faulhaber to be "dirty" or "grungy."

k.    Defendant also follows the discriminatory requests of clients who have communicated their preference for White applicants.

l.    For example, a manager at one client told Defendant that he didn't want any applicants who were Black. Faulhaber instructed Defendant's recruiters to give that manager what he wanted.

m.    As another example, Faulhaber forbade a recruiter from hiring a Black applicant who was working with a client for an additional shift because Faulhaber contended the manager of that shift did not want Black workers.

7

        n.      In order to facilitate these discriminatory hiring practices, Defendant often reviews the documents applicants submit for supposed indicia of race such as hair and eye color, or inspects driver's license photographs to determine race.

        o.      Defendant sometimes refers to Black applicants as "Bs" and White applicants as "Ws."

22.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2), by segregating Black applicants and employees. These unlawful practices include, but are not limited to, the allegations set forth in paragraph 21, particularly paragraphs 21(i)-(o), above.

23.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by failing to hire applicants because of their association with individuals of another race. For example, Faulhaber calls White female applicants who come to Defendant's office with Black boyfriends "nigger lovers" and then rejects and closes their applications.

24.     Since at least December 6, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 703 (a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by terminating employees because of their association with individuals of another race, specifically by terminating the employment of White employees for their associations with Black individuals. For example, when Faulhaber learned that a White employee was dating a Black man, Faulhaber called that employee "a nigger lover" and shortly thereafter terminated her employment and closed her application.

SEX

25.     Since at least January 1, 2014, Defendant has engaged in unlawful employment

practices at its Buffalo office and throughout Western New York, in violation of Section

703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by engaging in sex-based hiring, including

failing to hire both male and female applicants depending on the client or position. Specifically,

Defendant determined that some placements or job types should solely or primarily go to

applicants of one sex or another.

     a.     For example, Defendant almost exclusively hired men for a client trucking

        firm whose work involved loading and unloading.  This trucking firm was

        deemed a "male assignment" and men were almost exclusively assigned—

        women had to be "manly" looking to merit placement there.

     b.     Female applicants are primarily hired for placements with particular

        clients and for receptionist and clerical positions generally.

     c.     Defendant also complies with clients' requests for male or female workers

        only.

     d.     Defendant and some of its clients refer to females as "lights" and males as

        "heavies."

     e.     These clients repeatedly request a certain number of "heavies" and

        "lights" for certain shifts and days, and Defendant agrees to, and provides,

        the requested number of male and female workers.

26.     Since at least January 1, 2014, Defendant has engaged in unlawful employment

practices at its Buffalo office and throughout Western New York, in violation of Section 703

(a)(2) of Title VII, 42 U.S.C. § 2000e-2(a)(2), by segregating male and female applicants and

employees. These unlawful practices include, but are not limited to, the allegations set forth in

paragraph 25 above.

SEX/PREGNANCY

27.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Sections 701(k) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(k) and 2000e-2(a)(1), by failing to hire pregnant applicants.  For example:

       a.     Defendant rejects and closes applicants who are visibly pregnant or disclose their pregnancy, particularly applicants who are further along in their pregnancy.

       b.     During Charging Party's employment, Defendant sometimes rejected and closed two-to-three applicants per month because they were pregnant.

       c.     Defendant regularly asks pregnant applicants how much longer before they give birth.

       d.     Faulhaber also has expressed concerns about costs and liabilities associated with pregnant employees.

28.     Since at least December 6, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Sections 701(k) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(k) and 2000e-2(a)(1), by terminating the employment of pregnant employees.  For example, after Faulhaber learned that an employee Defendant had placed with a client was pregnant, Faulhaber called the employee, told her the assignment with the client had ended for misconduct that the employee had not in fact committed, and reprimanded her for not disclosing her pregnancy. Defendant never hired this employee again.

10

29.    The effect of the practices complained of in paragraphs 21-24 above has been to deprive applicants and employees of equal employment opportunities and otherwise adversely affect their status as employees and applicants for employment because of their race.

30.    The effect of the practices complained of in paragraphs 25-26 above has been to deprive female and male employees and applicants for employment of equal employment opportunities and otherwise adversely affect their status as employees and applicants for employment because of their sex.

31.    The effect of the practices complained of in paragraphs 27-28 above has been to deprive pregnant employees and applicants for employment of equal employment opportunities and otherwise adversely affect their status as employees and applicants for employment because of their sex.

32.    The unlawful employment practices complained of in paragraphs 21-28 above were and are intentional.

33.    The unlawful employment practices complained of in paragraphs 21-28 above were and are done with malice or with reckless indifference to the federally protected rights of Black, female (including pregnant), and male employees and applicants; and those employees and applicants who associate with individuals of a different race.

## ADEA CLAIMS

34.    Since at least January 1, 2013, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), by failing to hire applicants age 50 or over.  For example:

        a.    Faulhaber regularly instructs Defendant's recruiters to reject and close older applicants, particularly applicants age 50 or over, even when recruiters deem the applicants qualified and want to hire them.

11

b.  Faulhaber herself regularly rejects and closes applicants age 50 or over herself, and has stated things like she was rejecting this "old man" or has otherwise indicated that she was rejecting and closing an applicant because of age.

c.  Defendant solicits and otherwise attempts to ascertain applicants' dates of birth, including by asking for dates of birth on an emergency contact form given to applicants, and records applicants' dates of birth provided during interviews.

d.  Defendant fails to hire and closes numerous applicants over the age of 50 who are qualified and have work experience relevant to the jobs Defendant posts or for which Defendant is otherwise hiring.

e.  For example, Defendant rejected an applicant born in 1960 who had experience in bookkeeping, light industrial work, and general labor. Defendant created a closed Outlook file for this applicant, ensuring that he would never be hired. This applicant called Defendant repeatedly but was told there was nothing available.

f.  As another example, Defendant did not hire an applicant born in 1962 who had experience in clerical, computer, and office work, and who applied in response to Defendant's advertisement for clerical work. Defendant created a closed Outlook file for this applicant, ensuring that she would never be hired.

g.  As another example, Defendant rejected an applicant born in 1945 who had extensive experience in welding, material handling, shop work, and bridge and rail construction. Defendant created a closed Outlook file for

this applicant, ensuring that he would never be hired. This applicant

called Defendant multiple times seeking work, but Defendant always told

him that there was nothing available.

35.    The effect of the practices complained of in paragraph 34 above has been to

deprive applicants age 50 or older of equal employment opportunities and otherwise adversely

affect their status as applicants for employment because of their age.

36.    The unlawful employment practices complained of in paragraph 34 above were

and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## ADA CLAIMS

37.    Since at least January 1, 2014, Defendant has engaged in unlawful employment

practices at its Buffalo office and throughout Western New York, in violation of Sections 102(a)

and (b) of Title I of the ADA, 42 U.S.C. §§ 12112 (a) and (b), by failing to hire qualified

individuals with a disability. Numerous applicants whom Defendant fails to hire are qualified

individuals with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and

12111(8). Defendant regards these applicants as having a disability by failing to hire them

because of actual or perceived impairments, and/or these applicants have actual impairments that

substantially limit major life activities but could perform the essential functions of the jobs with

Defendant's clients with reasonable accommodation:

a.    In many instances, Defendant learns of actual or perceived impairments

because it asks applicants—well before an offer of employment is made—

probing questions about current or past impairments, injuries, physical or

medical conditions, and workers' compensation claims. The standard

form Defendant's recruiters use to interview applicants contains the

question: "Do you have any previous injuries or work related accidents?"

b.    Defendant generally does not hire, and closes, applicants who reveal an impairment, a medical or physical condition, an injury, or a workers' compensation claim during the application process.

c.    Defendant rejects and closes these applicants without making any determination as to whether they can perform, with or without reasonable accommodation, the essential functions of the jobs for which Defendant is or will be hiring.

d.    For example, in response to Defendant's questioning, an applicant disclosed her throat cancer, said that the cancer began six years before, but told Defendant that she was not receiving treatment, did not need any accommodation, and could perform any job. Defendant noted her throat cancer and its duration on Defendant's interview form. Defendant refused to hire and closed this applicant, but told her only that no position was available. Defendant told her the same thing when she repeatedly followed up seeking work.

e.    As another example, a blind applicant applied in 2015 with the assistance of a sighted person who accompanied him. Defendant immediately closed his application and shredded his application materials after he left the office. Defendant made no effort to determine whether the assistance of this sighted person or a sighted coworker, or any other accommodation, would allow this applicant to perform the essential functions of placements with Respondent's clients.

f.    As another example, in response to Defendant's questioning, an applicant revealed a previously broken tibia and fibia that required bi-monthly

14

medical appointments. Defendant noted this applicant's injury and
required medical appointments on his interview form. The applicant was
not hired and was closed. Defendant made no effort to determine whether
there were placements where this applicant's work schedule would allow
him to attend his medical appointments.

g.      As another example, Defendant rejected an applicant and created a closed
Outlook file for the applicant noting that he had a back impairment and
couldn't stand for an entire shift. Defendant made no effort to determine
whether there were placements where this applicant's standing limitation
could be accommodated.

h.      Defendant also often closes and refuses to hire applicants whom it initially
hired and placed; who then suffer or reveal an impairment, a medical or
physical condition, an injury, or a workers' compensation claim; and who
then seek to be hired for another placement.

i.      For example, Defendant hired an applicant who, after he started his job,
revealed to Defendant that he had an enlarged heart but needed only two
days off and could then work without restriction. Defendant closed and
refused to hire this applicant for another placement, even when he
reapplied more than a year later.

j.      Many of these rejected applicants have extensive relevant experience. For
example, the applicant rejected for throat cancer had experience in
customer service and housekeeping; and the applicant rejected because of
his previously broken tibia and fibia had experience performing carpentry
work and general labor.

15

k.     Until early 2015, Defendant regularly conducted drug tests of all applicants as soon as they walked into Defendant's office or while they were being interviewed. And since early 2015, Defendant continues to conduct drug tests for applicants it may place with certain clients.

l.     Defendant rejects and closes nearly all applicants who test positive for any substance, even when the applicant indicates the substance is prescribed or produces a prescription.

m.     For example, Defendant did not hire one applicant even though he explained that his positive test for amphetamines was caused by his prescribed Adderall, which had been prescribed for his anxiety and/or bipolar disorder.

38.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Sections 102(a) and (b)(5)(A) and (B) of Title I of the ADA, 42 U.S.C.§§ 12112(a) and (b)(5)(A) and (B), by failing to provide reasonable accommodations to the disabilities of applicants and/or failing to hire applicants because of the need to make reasonable accommodations to their impairments. As described in paragraphs 37 above, numerous applicants whom Defendant fails to hire are qualified individuals with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), because these applicants have impairments that substantially limit major life activities. For example:

a.     As described in paragraph 37 above, numerous applicants reveal impairments that substantially limit a major life activity and a need for accommodation.

16

       b.  As described in paragraph 37 above, particularly subparagraphs (c) and

          (e)-(h), Defendant makes no effort to accommodate these applicants,

          either by talking with its clients to see if accommodations can be provided,

          or in any other way.   Instead, Defendant fails to provide the reasonable

          accommodation requested or any other accommodation, and fails to hire

          and closes these applicants.

39.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 102(b)(6) of Title I of the ADA, 42 U.S.C.§§ 12112 (b)(6), by using a qualification standard that screens out or to tends to screen out a class of individuals with a disability. These unlawful practices include, but are not limited to, Defendant's practice of rejecting applicants who test positive for any substance for which Defendant tests even where the positive test is the result of prescribed medication, as described in paragraph 37, particularly paragraphs 37 (k)-(m), above.

40.     Since at least December 6, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 102(d) of Title I of the ADA, 42 U.S.C.§§ 12112(d) by making pre-offer medical and disability-related inquiries to applicants. These unlawful practices include, but are not limited to:

       a.  As described in paragraph 37 above, particularly paragraphs

          subparagraphs (a)-(d) and (f)-(g), before an offer of employment has been

          made, Defendant solicits extensive information that is likely to reveal

          information about disabilities, including asking applicants probing

          questions about current or past impairments, injuries, physical or medical

          conditions, and workers' compensation claims.

        b.   As discussed in in paragraph 37 above, particularly subparagraphs (a)-(d) and (f)-(g), Defendant rejects applicants based on their responses to these inquiries.

41.     Since at least January 1, 2014, Defendant has engaged in unlawful employment practices at its Buffalo office and throughout Western New York, in violation of Section 102(d) of Title I of the ADA, 42 U.S.C.§ 12112(d), by failing to keep medical and disability-related information in separate files and on separate forms. Defendant routinely places doctor's notes, workers' compensation records, and other disability-related documents and information in employees' personnel files, in applicant folders, and/or on applicants' interview and other application forms, including as described in paragraphs in paragraph 37, particularly paragraphs 37(d) and (f)-(g), above.

42.     The effect of the practices complained of in paragraphs 37-41 above has been to deprive applicants for employment, employees, and former employees of equal employment opportunities and otherwise adversely affect their status as applicants for employment, employees, and former employees because of disability, medical and disability-related inquiries, and/or Defendant's failure to keep medical and disability-related information  in separate files and on separate forms.

43.     The unlawful employment practices complained of in paragraphs 37-41 above were and are intentional.

44.     The unlawful employment practices complained of in paragraphs 37-41 above were and are done with malice or with reckless indifference to the federally protected rights of Defendant's applicants, employees, and former employees.

## TITLE VII, ADA, AND ADEA CLAIMS

### RETALIATION

45.     Since at least December 6, 2014, Defendant has engaged in unlawful discriminatory practices at its Buffalo office and throughout Western New York, in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d); Section 503(a) of the ADA, 42 U.S.C. § 12203(a); and Section 704(a) of Title VII, 42 U.S.C.  § 2000e-3(a), by constructively discharging Charging Party's employment in retaliation for her opposition to the unlawful practices described above, and also by discharging other employees who complain about discrimination. These retaliatory unlawful practices include, but are not limited to:

    a.    Charging Party repeatedly told Faulhaber that Defendant could not reject and close an applicant, or terminate an employee, on the basis of race, sex, age, or disability.

    b.    For example, Charging Party responded to Faulhaber's instructions not to send Black candidates to a specific client by saying that Defendant should send the best qualified candidates.

    c.    As another example, Charging Party told Faulhaber that Faulhaber was wrong to say Defendant should not hire a candidate because he was Black.

    d.    Charging Party also objected to Faulhaber's discriminatory hiring and discriminatory hiring instructions by telling Faulhaber that her instructions and Defendant's practices were illegal, and that Charging Party didn't want to work for a company that discriminated.

    e.    Charging Party repeatedly told Faulhaber that her destruction of personnel files and application materials was illegal, and that these documents had to be preserved.

19

f.    Charging Party made similar complaints about discriminatory hiring to Faulhaber's father, who is a part-owner of Defendant.

g.    When Charging Party disagreed with Faulhaber about a discriminatory hiring decision or voiced her objections to Defendant's discriminatory practices, Faulhaber told her to "shut up" and/or told her that if Charging Party didn't want to do her job, Faulhaber would find someone else who would.

h.    Faulhaber also repeatedly emphasized that she was Defendant's owner and therefore Charging Party would have to abide by Faulhaber's rules or be fired.

i.    Faulhaber responded to Charging Party's expressed reluctance to reject and close an applicant for discriminatory reasons by saying that Charging Party had to reject and close the applicant because Faulhaber said so.

j.    Charging Party observed that Faulhaber's discrimination and discriminatory directives worsened over time. As a result, Charging Party's expressions of opposition to discrimination, and Faulhaber's termination threats in response, grew more frequent. By the end of Charging Party's employment these exchanges were happening at least once a week.

k.    Shortly before the end of Charging Party's employment, she and Faulhaber had a particularly pointed confrontation about Faulhaber's treatment of Black applicants. A Black applicant drove up to Defendant's office playing loud music from his car stereo. Faulhaber loudly stated that that was why "they" were called "niggers", because that was how "they"

20

act. Charging Party told Faulhaber that she should not use that racist language or treat people that way, and that Black applicants in the waiting area could hear her. Faulhaber responded that it was Faulhaber's office and she would do what she wanted. Faulhaber then repeatedly used the word "nigger" in confronting the Black applicant who had been playing the music, including by using the term "nigger music."

l.    On September 16, 2015, Charging Party, faced with the prospect of being forced to participate in discrimination prohibited by Title VII, the ADEA, and the ADA, or being terminated if she refused to comply, was compelled to leave her employment with Defendant and was thereby constructively discharged.

m.    Defendant also terminates and fails to rehire other employees who oppose discrimination at placements. For example, Faulhaber terminated and closed two Black employees soon after she found out they had complained that they had been harassed and subjected to other discrimination at a placement because they were Black.

n.    Faulhaber informed one of those employees that he was being terminated because he had been absent for one day without notice, but the employee had been told that he was not to work that day.

46.    The effect of the practices complained of in paragraph 45 above has been to deprive Charging Party and other employees of equal employment opportunities and otherwise adversely affect their status as employees because of their protected activity

47.    The unlawful employment practices complained of in paragraph 45 above were and are intentional.

48.     The unlawful employment practices complained of in paragraph 45 above were are done with malice or with reckless indifference to the federally protected rights of Charging Party and other employees.

49.     The unlawful employment practices complained of in paragraph 45 above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

RECORDKEEPING

50.     Since at least January 1, 2013, Defendant has failed, in violation of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), and in violation of Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed.  For example:

a.      Defendant discards or destroys application materials for applicants Defendant fails to hire and closes—often immediately after the applicant applies and is rejected, and sometimes in larger purges that result in the destruction of the application materials well before a year has elapsed since Defendant received or created them.

b.      Defendant also destroys the application materials and employment records for employees whom it hires but then terminates and closes.

c.      Defendant has deleted relevant records, including closed Outlook files, after being served with Charging Party's charge of discrimination.

51.     Since at least January 1, 2013, Defendant has violated Section 7(a) of the ADEA, 29 U.S.C. § 626(a), by failing to make and preserve records required by the Commission necessary to the Commission's administration of the ADEA.  These unlawful practices include, but are not limited to, the allegations set forth in paragraph 50 above.

22

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against applicants, employees, or former employees on the basis of race, sex (including pregnancy), age, or disability and from engaging in any employment practice that discriminates on those bases.

B.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against applicants, employees, or former employees who engage in protected activity, and from engaging in any employment practice that retaliates.

C.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all applicants, employees, and former employees, and that eradicate the effects of Defendant's past and present unlawful employment practices.

D.      Order Defendant to make and preserve all records: (1) relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), and in accordance with Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c); and (2) required by the Commission pursuant to Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

E.      Order Defendant not to make pre-offer medical or disability-related inquiries.

F.      Order Defendant to keep medical and disability-related information and documents separate, and not to commingle such information and documents with other documents and information in personnel and applicant files.

G.      Order Defendant to make whole Charging Party and the aggrieved individuals described in paragraphs 21-28, 37-41, and 45, including but not limited to: (1) Black applicants and employees; (2) female applicants and employees (including pregnant applicants and employees); (3) male applicants and employees; (4) applicants and employees who associate with individuals of another race; (5) employees who oppose discrimination; (6) applicants (including former employees) with a disability; (7) applicants who are not hired because they test positive for prescribed substances; (8) applicants subject to pre-offer medical or disability-related inquiries; and (9) applicants and employees whose medical and disability-related records and information are mixed in with personnel and applicant files, by providing appropriate relief including backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to instatement, reinstatement, or frontpay in lieu thereof.

H.      Order Defendant to make whole Charging Party and the aggrieved individuals described in paragraphs 21-28, 37-41, and 45 above by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 21-33 and 37-49 above, including but not limited to, job search expenses and medical expenses, in amounts to be determined at trial.

I.      Order Defendant to make whole Charging Party and the aggrieved individuals described in paragraphs 21-28, 37-41, and 45 above by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 21-33 and 37-49 above, including but not limited to, emotional pain, suffering, humiliation, and inconvenience, in amounts to be determined at trial.

J.     Order Defendant to pay Charging Party and the aggrieved individuals described in paragraphs 21-28, 37-41, and 45 above punitive damages for its malicious and reckless conduct, as described in paragraphs 21-33 and 37-49 above, in amounts to be determined at trial.

K.     Grant a judgment requiring Defendant to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to individuals whose wages are being unlawfully withheld as a result of the age-based discriminatory hiring or the retaliatory constructive discharge complained of above, including but not limited to Charging Party, the individuals described in paragraphs 34 and 45 above,  and all individuals age 50 or over whom Defendant fails to hire because of age.

L.     Order Defendant to make whole Charging Party and all individuals adversely affected by the unlawful practices described in paragraphs 34-36 and 45-49 above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to instatement, reinstatement, or frontpay in lieu thereof.

M.     Grant such further relief as the Court deems necessary and proper in the public interest.

N.     Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated:  May 17, 2018

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.

Washington D.C. 20507


JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein@eeoc.gov

NORA E. CURTIN
Supervisory Trial Attorney
nora.curtin@eeoc.gov

 /s/ Daniel Seltzer
Daniel Seltzer
Trial Attorney
Equal Employment Opportunity
Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel: 212-336-3701
Fax: 212-336-3623
Email: daniel.seltzer@eeoc.gov

*Exhibit B*

EEOC Form 5 (11:09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 525-2016-00001 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Tammi C. Iser | (716) 876-2183 | 05-28-1972 |

| Street Address | City, State and ZIP Code |
|---|---|
| 252 Wabash Avenue, Lower, Kenmore, NY 14217 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| STAFFING SOLUTIONS OF WESTERN NEW YORK | 201 - 500 | (716) 551-0242 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1560 Harlem Road, Suite 1, Cheektowaga, NY 14206 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☒ SEX   ☒ RELIGION   ☒ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**

| Earliest | Latest |
|---|---|
| 01-01-2013 | 11-09-2015 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I worked for Respondent since 2013 until my constructive discharge on or about September 16, 2015. My last position was Office Manager.

Throughout my employment, Respondent engaged in unlawful employment practices. When I questioned these practices, my job was threatened. Based upon my observations, Respondent's unlawful employment practices included among other things:

1. Failure to Hire based on:
* Race-including associational discrimination
* Age over 40
* Religion
* Disability, Record of a Disability, Regarded as Disabled
* Pregnancy

JOHN E. THOMPSON, #01TH5023382
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires February 7, 20__

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| Nov 10, 2015 | Tammi C. Iser |
|---|---|
| Date | Charging Party Signature |

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 525-2016-00001 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

* National Origin/Hispanic-including English only requirements
* Gender/female
* Gender/Gender Identity-Transgender
* Gender/Gender Orientation
* Gender/Sexual Stereotyping

Discriminatory Job Assignment, including Segregated Locations- Client Employer requested preferences and Respondent preferences on the basis of:
* Gender/male (heavies)
* Gender/female (lights)
* Race/black-African American

Failure to accommodate based on:
* Religion
* Disability
* National origin/Hispanic-English only policies

Discharge/Constructive discharge based on:
* Pregnancy
* Disability
* Race
* Gender/female-including childcare/caregiver status

Respondent also engaged in pre-employment drug testing where applicants were required to give an oral swab. While the swab was being tested, the applicant was provided with an "Application Package" including an I-9 as required by law. While filling out the application package, Respondent used I-9 information to look for arrest and conviction records, credit information, and sex offender registry status without permission of the applicant. If something came up during the screening process, the applicant was given a cursory interview but was not referred for employment. The Respondent then destroyed the paper applicant file. The application package contained inquiries regarding child care/caregiver status questions, an applicant's disability, modes of transportation (which lead to discriminatory assignments based upon race/black), unemployment history and filings, and workers compensation claims. If these questions revealed negative outcomes or revealed information in conflict with Respondent's preferences, the applicant was not referred and the paperwork was destroyed. Respondent administered a testing module that failed to provide a reasonable accommodation for applicants with a disability and with language barrier concerns. Respondent used date of birth information on emergency contact forms to discriminate against individuals over the age of 50. Upon information and belief, these inappropriate screening tools created a disparate impact on female, black, Hispanic, and disabled applicants.

JOHN E. THOMPSON, #01TH5023392
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires February 7, 2018

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | *John E Thompson* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Janni C. Clser* |
| **Nov 10, 2015**    *Janni C. Clser* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |
| Date        Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 525-2016-00001 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

Respondent employees were required to ask applicants probing questions to elicit information about disability, maternity/pregnancy, child care/caregiver issues, and medical appointments. Applicant employees were then input on Respondent's "Microsoft Outreach" program and color coded according to referral. Specifically, those coded in "red" were never referred and their application package destroyed. "Red" coded applicants would include but were not limited to individuals who revealed a disability, pregnancy, back impairment, conviction record, previous worker's compensation claim as well as due to their weight or appearance such as wearing "baggy pants" or dreadlocks, or the use of slang or "Ebonics." Applicants were also coded "red" if they complained about discrimination or harassment. Employees terminated for these reasons could never be referred again. Individuals coded "yellow" are active working employees. Those coded "green" are candidates who are available for work but haven't been assigned yet. Employees coded "purple" are individuals who have been laid off that need to go back to work before they file for unemployment. They receive preferential hiring. Employees coded as "orange" are individuals who have been hired on permanently by Client Employers.

Respondent engaged in discriminatory client employer requests including but not limited to often sending either "lights" (females) or "heavies" (males) to certain job positions. Additionally, Respondent referred to whites as "Ws" and blacks as "Bs" and complied with discriminatory requests from client employers who only wanted "clean cut white males". Respondent would also make decisions on its own regarding the assignment of jobs based upon these criteria.

Respondent's owner, Kathleen Faulhaber, engaged in racial name calling and comments referring to individuals as "nigger lovers", "wiggers", "big black niggers", and made statements such as "that's a big black nigger isn't it, you can't send him to..." Faulhaber engaged in this behavior on a regular basis. Faulhaber engaged in this behavior in front of a black applicant who tore up his application and walked out.

When I complained about the discriminatory behavior and job assignments, I was told that if I didn't like it, I could find work elsewhere. Faulhaber would scream "I am the owner, sit down and shut up. If you don't want to do your job, I will find someone who will." Faulhaber's behavior became so outrageous that I was constructively discharged on or about September 16, 2015.

I believe I have been subject to a hostile work environment because I engaged in a protected activity of complaining and questioning Respondent's unlawful discriminatory practices and retaliated against in the form of verbal abuse and the threatening of my job security and constructively discharged in willful violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, as amended, and the Age Discrimination in Employment Act. Additionally, Respondent engaged in unlawful acts under these same statutes based upon race, gender, national origin, age, and disability. Upon information and belief, Respondent has failed to maintain its record keeping requirements under the statutes.

JOHN E. THOMPSON, #01TH5023392
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires February 7, 2018

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements <br> *John E Thompson* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT <br> *Janni C. User* |
| **Nov 10, 2015**    *Janni C. User* <br> Date      *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.  **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

*Exhibit C*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Buffalo Status Line: (866) 408-8075
Buffalo Direct Dial: (716) 551-4442
TTY (716) 551-5923
FAX (716) 551-4387
Website: www.eeoc.gov

## DETERMINATION

NOV 0 7 2017

**Charging Party**                                    **Charge No:** 525-2016-00001
Tammi C. Iser
252 Wabash Avenue, Lower
Kenmore, New York 14217

**Respondent**                                        
Staffing Solutions of Western New York
1560 Harlem Road
Suite 1
Cheektowaga, New York 14206

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII), Title I of the Americans with Disabilities Act of 1990, as amended (ADA), and the Age Discrimination in Employment Act (ADEA). Respondent Staffing Solutions of Western New York is an employer within the meaning of the statutes. All requirements for coverage have been met.

Charging Party alleges that, throughout her employment, Respondent engaged in unlawful employment practices in violation of Title VII, the ADA, and the ADEA. More specifically, Charging Party alleges that Respondent: (1) failed to hire qualified applicants based on race, age, religion, disability, national origin, sex, and pregnancy; (2) made discriminatory job assignments and honored discriminatory requests from clients based on sex and race; (3) failed to accommodate individuals based on their religion or disability; and (4) terminated or constructively discharged employees based on pregnancy, disability, race, and sex. Charging Party alleges that when she complained about Respondent's discriminatory practices, Respondent subjected her to a hostile work environment, threatened to terminate her employment and, ultimately, constructively discharged her.

Respondent denies Charging Party's allegations, and denies that Charging Party ever complained about harassment, discrimination, or intimidation prior to her voluntary separation from employment.

Based upon the evidence obtained during the investigation, the Commission finds that Charging Party complained about Respondent's discriminatory practices, thereby engaging in protected activity under Title VII, the ADA, and the ADEA, and that Charging Party was constructively discharged in retaliation for opposing Respondent's unlawful employment practices under the statutes.

The evidence obtained during the investigation further establishes that, from at least January 1, 2013 through the present, Respondent engaged in discriminatory practices on the basis of race, sex, age, and disability in violation of Title VII, the ADA, and the ADEA. Specifically, the evidence shows that

Respondent failed to hire qualified applicants based on age, disability, race, and sex; assigned temporary employees on the basis of race and sex; and terminated employees on the basis of race, sex (including gender identity/transgender status), and disability. Respondent also retaliated against workers who complained about harassment or discrimination on the job.

The evidence further establishes that Respondent violated the ADA by subjecting applicants and employees to impermissible disability-related inquiries and medical examinations, failing to provide reasonable accommodations to individuals with disabilities, and terminating employees on the basis of disability.

The evidence obtained during the investigation also establishes reasonable cause to believe that Respondent discriminated against female applicants and employees on the basis of pregnancy in violation of Title VII, as amended by the Pregnancy Discrimination Act. The evidence shows that Respondent failed to hire or assign pregnant applicants or employees, and terminated female employees on the basis of pregnancy.

Lastly, the investigation revealed that Respondent failed to comply with its record-keeping obligations under Title VII, the ADA, and the ADEA and the EEOC's regulations. Respondent failed to keep employment records as required by the statutes and intentionally destroyed applications from unsuccessful applicants. The evidence also establishes that Respondent failed to preserve relevant employment records after receiving notice of the Charge. Finally, the investigation revealed that Respondent commingles confidential medical records in the personnel files of employees and applicants in violation of the ADA.

This determination is final. Title VII, the ADA, and the ADEA require that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with Title VII and the ADA and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII, Section 107 of the ADA, and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

John E. Thompson, Jr., Director
Buffalo Local Office

NOV 0 7 2017
Date