

Linda H. Joseph, Esq.
(716) 881-4902
ljoseph@sjalegal.com

February 14, 2022

**<u>CONFIDENTIAL AND SUBMITTED UNDER SEAL, INCLUDING ENCLOSURE</u>**

**<u>VIA EMAIL ( Jeremiah_McCarthy@nywd.uscourts.gov)</u>**

Hon. Jeremiah McCarthy
U.S. Magistrate Judge
U.S. Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:    *EEOC v. Staffing Solutions of WNY, Inc.*, No. 1:18-cv-00562-LJV-JJM

Dear Judge McCarthy:

      I have enclosed, as requested, a complete copy of the chart which is the subject of the EEOC's pending motion for discovery. You had requested that I provide a letter explaining the fifth column of the chart, including the date of creation and the times and information regarding contributions or entries by persons to the fifth column inasmuch as you will be reviewing the enclosed chart to determine whether to uphold Defendant's claim that portions of this chart—at a minimum—are protected from disclosure by the attorney-client or attorney work product and therefore can be excluded from production in discovery. As discussed below, in preparing this letter, I have learned that there also is a sixth column which—like the fifth column—should not be disclosed to Plaintiff. Therefore, this letter will address both the fifth and sixth columns of the enclosed chart.

### INTRODUCTION AND DESCRIPTION OF THE CHART'S SIX COLUMNS

      My research regarding the enclosed chart and my discussions with my law partner Ginger Schroder, Esq.—who preceded me and Alicia Rood, Esq. as counsel to Defendant—have disclosed additional information that Alicia and I were not aware of at the time of our most recent telephone conference with the Court on February 7, 2022 regarding the EEOC's motion to compel discovery. As I will discuss below, in researching the origins of the chart, I have become aware that Defendant actually would be justified in excluding the entire chart from production in discovery because all portions of it were created at the instruction of counsel in anticipation of litigation. As noted above, I also have learned for the first time that there is a sixth column that—like the fifth column—is privileged. Nonetheless, despite the fact that Alicia and I now know that the entire enclosed chart could arguably be withheld as privileged, we are nonetheless standing by our commitment made during the conference call on February 7,

2022 that we would produce the first four columns (Columns A to D) of the chart to the EEOC. We feel this is the appropriate action to take because the first four columns (Columns A to D) do contain factual information—as opposed to columns five and six (Column E and F) which clearly contain privileged information consisting of communications intended specifically for counsel's eyes and entries which constitute attorney work product. Accordingly, we have transmitted by email today—February 14, 2022—a version of the enclosed chart that includes Columns A to D and excludes Columns E and F.

As a preliminary matter, I believe it would be helpful to the Court to provide here a summary of the six columns[1]—Columns A to F—to assist the Court in its review of enclosed chart. According to the Excel document itself, it was first created on March 10, 2016 and was last modified on May 8, 2020 but that modification date is not significant since that is the date on which this version was sent to our law firm and presumably the May 8, 2020 modification date is simply a reference to our firm's entry of the chart into our computer system. The chart includes entries describing interviews and actions taken with respect to 1281 candidates who were interviewed for employment and either hired or not hired. Please note that this does not include all such interviewed persons because at a certain point it was decided that there was more than sufficient information gleaned from Staffing Solution's files and records to serve counsel's needs for evaluation of the merit—or more appropriately the lack of merit—to Plaintiff EEOC's claims of discrimination. The six columns at issue consist of the following:

1. Column A: The name of the candidate interviewed for possible employment whose interview notes were reviewed to obtain information.

2. Column B: The date of the interview of such person.

3. Column C: The initials of the employee of Defendant who interviewed the candidate for employment and created the notes used to create the chart.

4. Column D: The facts obtained by Defendant's employee from the interview file.

5. Column E: The communication provided by Defendant's employee to Defendant's counsel which were provided at the request of counsel to highlight the key issues raised by the interview file.

6. Column F: The comments entered by counsel for Defendant reflecting the attorney's work product and thoughts as to Column E.

---

[1] In prior communications with the EEOC the Defendant's counsel referred to columns 5 and 6 as a single column since both contained commentary on the factual information summarized in column 4.

## HISTORY OF THE CHART'S CREATION AND PERSONS INVOLVED

The chart was physically created by Laura Formaniak who worked for Defendant Staffing Solutions of WNY, Inc. from January 2016 until January 11, 2018. Laura Formaniak did not begin work on the chart until March 10, 2016. This work began, as discussed below, in response to the directions of counsel, Ginger D. Schroder. Our law firm, Schroder, Joseph & Associates LLP was formally retained on February 26, 2016, and lead counsel who handled this matter initially was Ginger D. Schroder.

As our firm's internal records show, Ginger Schroder was first contacted about representing Defendant on or about February 11 or 12, 2016. At the time, Defendant was represented by prior counsel, Krista Gottlieb, Esq. Ginger received the client file from Krista Gottlieb on February 12, 2016.

Ginger Schroder had her first meeting with Kathy Faulhaber[2] and her father on February 17, 2016. At this first meeting Kathy Faulhaber informed Ginger that the Defendant's corporate records would show that the allegations of discrimination being made by the EEOC were without merit. There was a discussion at this meeting of making lists of the employees for the purpose of gathering information as to the employees and candidates for employment that would address the issues being raised by the EEOC and assist counsel in developing Defendant's defense strategy. This "gathering of data" from the existing data of Staffing Solutions was to involve constructing a data base for counsel's use, involving compilation of information to show counsel why—or why not—particular individuals were hired. On February 25, 2016, Ginger Schroder again went to Defendant's office to review more files and to assist Defendant and its employees (including Kathy Faulhaber and Laura Formaniak) in compiling the evidence to be included in the chart, and to meet representatives of the EEOC who were going to remove some files from our client's offices. The February 17 and February 25 meetings were preceded by or followed by one or more emails concerning these same topics.[3]

Ms. Faulhaber assigned Laura Formaniak to work on the project. The instructions provided to Defendant by Ms. Schroder on the preparation of the chart included instructions to populate the fifth column (Column E) with a few words to describe why candidates were accepted or not accepted. Thus, the words inserted into Column E were placed there by Laura Formaniak and were provided at the instruction and to be used by counsel for Defendant who at that time was Ginger Schroder. They were placed there by

---

[2] Kathy Faulhaber's father owns 20% of Defendant Staffing Solutions of WNY, Inc.—contrary to the claims of Plaintiff EEOC that Ms. Faulhaber is a 100% owner of Staffing Solutions. Ms. Faulhaber's father is active in overseeing corporate operations and often joins meetings that I have with the client in developing defense strategies.

[3] On February 29, 2016, Ms. Schroder also went to Defendant's office to take boxes of employee files back to our law firm's office. There were additional discussions on February 29, 2016 as to compiling the information to be included in the chart. There also was at two emails from Defendant to Ms. Schroder (on March 2, 2016) and another email (March 4, 2016) regarding this information needed for defense of the claims of discrimination being made by Plaintiff EEOC.

3

Ms. Formaniak from March 10, 2016 (when she began work on the chart) and we do not know when she ceased work on the chart before her departure in January of 2018, but certainly she made no more entries after her departure from Staffing Solutions. Ginger Schroder has reviewed the chart and states that she entered the comments in the sixth column (Column F) and that these comments reflected her thoughts at the time based on the information provided to her on the chart by the client.

Given the foregoing, it is respectfully submitted that the fifth and sixth columns (Columns E and F) are privileged and should be withheld from disclosure to Plaintiff EEOC. If the Court has further questions, we would be happy to respond.

Thank you for your assistance.

Sincerely,

**SCHRÖDER, JOSEPH & ASSOCIATES, LLP**

Linda H. Joseph

Enclosure