**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:18-cv-00562-LJV-JJM |
| v. | ) ) ) | |
| STAFFING SOLUTIONS OF WNY, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**<u>CONSENT DECREE</u>**

This action was filed on May 17, 2018, by Plaintiff Equal Employment Opportunity

Commission ("EEOC"), an agency of the United States Government, to correct employment

practices made unlawful by Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),

Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination

in Employment Act ("ADEA"); and Title I of the Civil Rights Act of 1991, and to provide

appropriate relief to individuals who were harmed by such practices. Specifically, the EEOC

alleged that Defendant refused to hire highly qualified Black applicants or placed them in the

lowest paying, least desirable jobs; complied with clients' race and sex preferences and rejected

pregnant applicants; rejected applicants over the age of 50 and those whom Defendant deemed

disabled; improperly asked applicants about injuries and medical conditions;  and retaliated

against employees who complained about discrimination, including Charging Party Tammi Iser.

The specific discriminatory conduct and practices that the EEOC alleged Defendant

engaged in are set forth in detail in the Complaint filed in this action. Defendant filed an Answer

to the Complaint denying the EEOC's allegations.

In consideration of the mutual promises of each party to this Consent Decree, the sufficiency of which is hereby acknowledged, it is agreed, and IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

**GENERAL PROVISIONS**

1.      The EEOC and Defendant Staffing Solutions of WNY, Inc. ("Defendant") desire to settle this action, and therefore do hereby stipulate and consent to entry of this Decree as final and binding between the parties.

2.      The Consent Decree resolves, without any admission of liability by the Defendant, all issues and claims that were raised in the EEOC's Complaint and EEOC Charge of Discrimination number 525-2016-00001, which served as the jurisdictional prerequisite in this case.  This Consent Decree in no way affects EEOC's right to process any pending or future charges that may have been or will be filed against Defendant, and to commence civil actions on any such charges. It is understood and agreed that all claims alleged in the Complaint and the underlying EEOC Charge of Discrimination number 525-2016-00001, including the claims asserted by the EEOC seeking relief for the Charging Party and Claimants, are resolved by this Consent Decree.

3.      The EEOC and Defendant agree that this Court has jurisdiction over the subject matter of this litigation and the parties, that venue is proper, and that all administrative prerequisites have been met.

4.      No party will contest the validity of this Consent Decree or the jurisdiction of the Court to enforce this Consent Decree and its terms.

5.      The terms of this Consent Decree represent the full and complete agreement of the parties.  The parties agree that this Consent Decree may be entered without Findings of Fact and Conclusions of Law being made and entered by the Court.

6.      At least sixty days before Defendant engages in any transfer or sale of the corporation's shares or of a substantial portion of its assets or business, Defendant must provide written notice of this lawsuit and a copy of the Complaint and this Consent Decree to any such potential purchaser or transferee.  For the purposes of this Consent Decree, a "substantial portion" is defined as more than 20 percent of the fair market value.

7.       At least 60 days before Defendant engages in any merger, de facto merger, consolidation, or any action that would result in another entity becoming Defendant's successor under the federal common law "substantial continuity" test, Defendant must provide written notice of this lawsuit and a copy of the Complaint to that entity.

8.      Defendant will provide written notice to the EEOC twenty-one days before any transfer, sale, merger, consolidation, or other action covered by paragraphs 6 and 7, above.

9.      The terms of this Consent Decree will apply to any purchaser, transferee, or other entity that is a successor under the federal law "substantial continuity" test.

10.      This Consent Decree may be amended, except that no waiver, modification, or amendment of any provision of this Consent Decree will be effective unless made in writing, signed by all the Parties, and approved by the Court.

11.      If one or more provisions of this Consent Decree are rendered unlawful, unenforceable, or incapable of performance as a result of a legislative act or a decision by a court of competent jurisdiction, the remaining provisions of this Consent Decree that are not rendered unlawful, unenforceable, or incapable of performance will remain in full force and effect and the

3

parties' responsibilities will not abate as to any and all provisions that have not been rendered

unlawful unenforceable, or incapable of performance, except to the extent that the intent of this

Consent Decree would be undermined.

12.     A breach of any term of this Consent Decree by Defendant will be deemed a

material and substantive breach of this Consent Decree, provided however, in the event of any

claim of breach of this Consent Decree by the Defendant, the EEOC will provide the Defendant

with written notice of any such failure and a twenty-one-day opportunity to cure by taking

reasonable actions to correct any alleged breach of this Consent Decree.  Any notice alleging that

Defendant violated this Consent Decree by engaging in discrimination against any individual at a

minimum will include the name of the individual and a written statement of the allegations of the

discrimination. Nothing in this Consent Decree will be construed to preclude the EEOC from

bringing proceedings to enforce this Consent Decree if Defendant fails to perform any of the

terms contained herein, but it shall be a defense to any such proceedings that Defendant has

cured any such breach within a twenty-one-day opportunity to cure period by taking reasonable

actions to correct any alleged breach of this Consent Decree.  This Consent Decree will be

construed by this Court under applicable federal law.

13.     All notifications, reports, and communications to the parties required under this

Consent Decree will be made in writing and will be sufficient if emailed to the following persons

(or their designated successors):

> For EEOC:
>
> Daniel Seltzer and Renay Oliver
> Trial Attorneys
> Equal Employment Opportunity Commission
> New York District Office
> daniel.seltzer@eeoc.gov
> renay.oliver@eeoc.gov

and decreemonitor.nydo@eeoc.gov

For Defendant:

Linda H. Joseph, Esq.
Schroder, Joseph & Associates, LLP
394 Franklin Street, Second Floor
Buffalo, New York 14202
ljoseph@sjalegal.com

Kathy Faulhaber
CEO, Staffing Solutions of Western New York, Inc.
kfaulhaber@staffing-wny.com

14.     Any party may change its email address by written notice to the other parties setting forth a new address for this purpose.

15.     Days refers to calendar days.

16.     The entry date of this Consent Decree will be the date it is docketed by the Clerk of the Court after it is signed by and/or receives approval from the Court.  "Entry of this Consent Decree by the Court" means the entry date of this Consent Decree.

17.     Unless otherwise specified, the provisions and requirements of this Consent Decree will remain in effect for three years from the entry date of the Consent Decree and will no longer remain in effect upon the termination of this Consent Decree.

### **INJUNCTIVE RELIEF**

#### Injunctions

18.     Defendant; its managers, officers, or agents, when acting on behalf of the Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from failing to consider, refer to its clients, or offer positions to, any applicant/employee based

5

on race. Nothing herein shall limit Defendant's right to consider, refer to its clients, or offer positions to any qualified individual, provided that race is not a factor in any such decision.

19.     Defendant; its managers, officers, or agents, when acting on behalf of the Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from failing to consider, refer to its clients, or offer positions to, any applicant/employee based on pregnancy or sex. Nothing herein shall limit Defendant's right to consider, refer to its clients, or offer positions to any qualified individual, provided that neither pregnancy nor sex is a factor in any such decision, although Defendant may consider an individual's inability to perform the essential functions of a job even with a reasonable accommodation.

20.     Defendant; its managers, officers, or agents, when acting on behalf of the Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from failing to consider, refer to its clients, or offer positions to, any applicant/employee over age 40 because of age, and from requesting dates of birth before a job offer is made.  Nothing herein shall limit Defendant's right to consider, refer to its clients, or offer positions to any qualified individual, provided that age is not a factor in any such decision. Nothing herein shall prevent the Defendant from requiring individuals to complete an I-9 form, provided that the I-9 forms are not kept with the applicant's application file and the Defendant does not refer to or consider the I-9 form prior to making an offer of employment.

21.     Defendant; its managers, officers, or agents, when acting on behalf of the Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from failing to consider, refer to its clients, or offer positions to, any applicant/employee based on an ADA-covered disability, or prior workers' compensation claim, or disclosed injury, or because of the need or potential need to provide reasonable accommodations. Nothing herein

shall limit Defendant's right to consider, refer to its clients, or offer positions to any qualified individual, provided that the applicant/employee's disability, injury, or prior workers' compensation claim is not a factor used in making Defendant's determinations, although Defendant may consider an individual's inability to perform the essential functions of a job even with a reasonable accommodation.

22.     Defendant;  its managers, officers, or agents, when acting on behalf of Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from making pre-offer medical or disability-related inquiries to applicants. This includes, but is not limited to, pre-offer inquiries concerning any current or past impairments, injuries, physical or medical conditions, or workers' compensation claims. Nothing herein shall enjoin Defendant from making inquiries regarding the types of work the applicant is interested in or describing the essential functions of the types of positions the applicant is seeking to be considered for and asking if the applicant is able to perform those functions with or without a reasonable accommodation.

23.     Defendant, its managers, officers, or agents, when acting on behalf of Defendant; and any other person or entity acting on behalf of Defendant, are hereby enjoined from refusing to hire or re-hire applicants and employees who are on medication or test positive for any substance for which Defendant tests, provided the medication is prescribed by a physician or otherwise taken legally and does not create a specific, objective safety concern in the workplace of the placement for which Defendant would otherwise consider the applicant or employee. Nothing herein shall limit Defendant's right to consider, refer to its clients, or offer positions to any qualified individual, provided that the individual's prescribed medication is not a factor in any such decision.

24.     Defendant; its managers, officers, or agents, when acting on behalf of the Defendant;  and any other person or entity acting on behalf of Defendant, are hereby enjoined from retaliating against any applicant or employee, including but not limited to taking any adverse action because an applicant or employee has complained of what the applicant/employee believes to be unlawful discrimination by Defendant or by one of Defendant's clients, has opposed practices the applicant/employee considers to be unlawfully discriminatory, has participated in protected activity, and/or has provided information related to complaints of discrimination. Nothing herein shall limit Defendant's right to make any employment decision because of an individual's misconduct, poor performance, or qualifications, or its right to consider, refer to its clients, or offer positions to any qualified individual, provided that protected activity is not a factor in any such decision.

25.     Defendant and any successor to Defendant do not waive any defenses they may have and all such defenses are preserved and retained by Defendant for itself or any successor to Defendant.

<u>Postings and Distribution of Notices</u>

26.     Within seven days of entry of this Consent Decree by the Court and for the three-year duration of the Consent Decree as indicated on the document, Defendant will conspicuously post and maintain a "Notice of Lawsuit and Resolution" in all prominent places where employee notices are posted, including any reception or waiting area visually accessible to applicants and employees of Defendant. A copy of the Notice of Resolution is attached as Exhibit A to this Consent Decree.  Within seven days of posting, Defendant will provide pictures and certify in writing to the EEOC that it has posted a copy of the Notice of Resolution.

27.     Within fourteen days of entry of this Consent Decree by the Court, Defendant will provide to all new applicants at the time of their interview an application package that includes the following:

      a.   A statement ("Statement to Applicants") attached hereto as Exhibit B, affirming Defendant's commitment to equal opportunity in all aspects of employment and advising applicants that they should contact the Independent Monitor (see paragraph 30, below) if they believe that they were not hired or placed because of race, sex (including pregnancy), age, or disability, or that they were placed in certain positions or denied opportunities because of their membership in one of those categories.   The Statement to Applicants will be provided on a separate piece of paper that applicants may take home. Nothing in this paragraph requires Defendant to provide the Statement to Applicants separately, but instead it will be included in the application package referenced above that is to be given to the applicant at the time of their interview.

      b.   Defendant's Non-Discrimination Policy, attached hereto as Exhibit E.

      c.   An introductory statement requesting that the applicant fill out a Self-Identification Survey, a paper copy of the Self-Identification Survey, and a link to this Self Identification Package for the applicant to access on the Defendant's website.  A copy of this Self Identification Survey is attached as Exhibit D to this Consent Decree.

Every six months beginning six months after entry of this Consent Decree, Defendant will certify in writing that it has provided an application package including Exhibits B, D, and E to all

applicants, and affirm that a list of applicants to whom such application packages were distributed was kept and will be available to the Independent Monitor upon request.

28.     Within 14 days of entry of this Consent Decree by the Court, Defendant will issue to all clients a letter ("Letter to Clients") signed by Faulhaber setting forth the obligations of Defendant and its clients under federal anti-discrimination laws and emphasizing Defendant's commitment to abide by such laws.  A copy of the Letter to Clients is attached as Exhibit C. Within 21 days of entry of this Decree by the Court and annually thereafter, Defendant must provide to the EEOC a certification stating that Exhibit C, the Letter to Clients, has been given to all clients in the first year and to all new clients in each year thereafter for the term of this Consent Decree.

29.     Defendant will provide a copy of the Letter to Clients to all new clients within seven days of engagement.

<u>Independent Monitor</u>

30.     Within fourteen days of entry of this Consent Decree by the Court, and for the duration of this Consent Decree, Defendant will retain Joseph Saeli, Esq. (hereinafter referred to as the "Independent Monitor") to monitor Defendant's hiring and placement practices, ensure compliance with this Decree, and receive, investigate, and address complaints of discrimination and retaliation from Defendant's applicants and employees.  The Independent Monitor must create a dedicated email address and phone number to which individuals may direct complaints of discrimination or retaliation.

<u>Website Statement of Equal Opportunity</u>

31.     Within twenty-one days of entry of this Decree by the Court, Defendant will include the following language <u>in bold</u> on its website confirming that Defendant is an equal

opportunity employer and specifically stating that Defendant will not discriminate based on race, sex (including pregnancy), age, or disability:

> Staffing Solutions is an equal opportunity employer.  We do not discriminate on the basis of race, color, religion, national origin, disability, pregnancy, gender, sexual orientation, or any other status protected by law.

The font size of this language will be equal to or greater than the font size of all other language, other than headers and logos.

<u>Revised Anti-Discrimination Policy</u>

32.     Within twenty-one days of entry of this Consent Decree by the Court, Defendant will adopt and distribute (in hard copy via U.S. mail) to each employee the revised anti-discrimination policy (the "Policy").  As noted in paragraph 27 (b), above, a copy of the Policy is attached as Exhibit E to this Decree, but that attachment is not a representation by the EEOC that Defendant has been or currently is in compliance with federal anti-discrimination laws.

33.     As noted in paragraph 27 above, all new employees will receive as part of their application materials the statement attached as Exhibit B and the Policy attached as Exhibit E, and therefore will have the Defendant's Policy in advance of being hired, along with the contact information for the Independent Monitor.

34.     Defendant may not modify the Policy without EEOC approval. If a change in the law requires modification, EEOC will promptly approve any changes necessitated by law.

35.     Within thirty days of entry of the Consent Decree, and on an annual basis within thirty days of the anniversary of entry of this Consent Decree thereafter, Defendant will certify in writing to the Independent Monitor that they have distributed the Policy in accordance with the above terms and include a list of employees to whom it was distributed.

<u>Training</u>

36.     Within thirty days of entry of the Consent Decree by the Court and on an annual basis thereafter for the duration of the Consent Decree, Defendant will have the Independent Monitor provide Kathleen Faulhaber and all management, supervisory employees, employees with human resources duties, and all employees of any level who are or may become responsible for the screening, hiring, and referral of applicants for employment, with no fewer than five hours of live, interactive, in-person training on federal laws prohibiting discrimination in employment, with a special emphasis on discrimination in hiring and by staffing companies.  The training must be conducted in a small class setting of no more than ten attendees. All training materials must be submitted to EEOC for its approval within fourteen days of entry of the Consent Decree by the Court, but such approval shall not be unreasonably withheld. Newly hired management, supervisory employees, employees with human resources duties, and all newly hired employees of any level who are or may become responsible for the screening, hiring, and referral of applicants for employment will be given the training within fourteen days of their start date or the date responsibility was assumed, although the training need not be in-person.

37.     The trainings will: (1) cover the rights and responsibilities of employees under federal anti-discrimination laws; (2) describe or portray real-world examples of unlawful conduct, specifically as it relates to interviewing, screening, and hiring practices; (3) discuss best practices for addressing discriminatory client preferences; (4) encourage bystander reporting; (5) review the Policy; (6) cover Defendant's record-retention policy; and (7) cover the requirements of this Consent Decree.

38.     Within seven days of the completion of any training described in paragraphs 36 to 37 above, the Independent Monitor will provide the EEOC with a copy of an attendance sheet

signed by all attendees, a certification that all attendees were present for the entirety of the

training, and a list of the required employees, if any, who did not attend training as required.

39.     At least 21 days prior to the required trainings discussed in paragraphs 36 to 37

above, Defendant will provide the EEOC notice of the date, time, and location of the scheduled

training.  The EEOC, at its discretion, may attend and observe one or more of the training

sessions and may provide changes to be implemented by the trainer.

40.     EEOC must approve any changes to the outside trainer or training content.

<u>Monitoring and Reporting</u>

41.     The Independent Monitor may monitor Defendant's compliance with this Consent

Decree through the inspection of Defendant's premises and records, and through interviews with

Defendant's officers, agents, employees, and contractors.  Defendant will make available for

inspection and copying any records related to this Consent Decree upon request by the

Independent Monitor.

42.     Within two months after entry of this Consent Decree by the Court, Defendant

will provide the Independent Monitor with its: (1) Outlook database files as maintained by

Defendant for all current employees/applicants on the date the Consent Decree was entered; and

(2) payroll records since January 1 of the year prior to the year in which the Consent Decree is

entered; and (3) a copy of, or all the information contained in, all Self Identification Surveys

filled out since the institution of the survey. The information contained in Outlook database

and/or payroll records will include to the extent it is available to Defendant through the interview

process and/or through subsequent employment: (1) the name, home address and  telephone

number of the applicant or employee; (2) work placement, including the name of client and

dates; (3) the hourly rate and total amount earned in any reporting period; and (4) if applicable,

the reason why the applicant or employee was "closed" (i.e., deemed ineligible for future placement) during the reporting period. This paragraph applies only to applicants who have come into Defendant's office to apply for employment or for an interview.

43. Every four months thereafter, Defendant will provide the Independent Monitor with: (1) its Outlook database files as maintained by Defendant for all employees or applicants who applied, sought work, or were placed since the previous Outlook files were provided by Defendant; (2) its payroll records covering the period since the previous payroll records were provided by Defendant; and (3) a copy of, or all the information contained in, all Self Identification Surveys filled out since the previous Self Identification Surveys were produced by Defendant to the Independent Monitor. The information contained in Outlook database and/or payroll records will include (to the extent it is available to Defendant): (1) the name, home address, telephone number, and email address of the applicant or employee; (2) work placement, including the position, name of client, location, and dates; (3) the hourly rate and total amount earned in any referred assignment; and (4) if applicable, the reason why the applicant or employee was "closed" (i.e., deemed ineligible for future placement) during the period. This paragraph applies only to applicants who have come into Defendant's office to apply or for an interview.

44. The Independent Monitor may contact Defendant's applicants or employees, including to obtain information about their placements and regarding race, sex, pregnancy, age and disability status.

45. Every four months beginning four months after entry of this Consent Decree, the Independent Monitor will provide the EEOC with a report describing his affirmative monitoring and findings, including specific steps taken to: (1) review and analyze Defendant's Outlook and

payroll data; (2) contact applicants or employees who the Independent Monitor determines may have been subject to discrimination in hiring or placement or at a placement; and (3) obtain additional documents and information from Defendant about or related to those applicants or employees who the Independent Monitor has determined may have been subject to discrimination in hiring or placement or at a placement. The report will also include the Independent Monitor's findings as to : (1) whether discrimination occurred based upon the Independent Monitor's investigation conducted after the Independent Monitor has determined that any applicant or employee may have been subject to discrimination in hiring or placement or at a placement; or (2) whether Defendant complied with its obligations under this Consent Decree.

46.     Should the Independent Monitor determine that discrimination occurred or that Defendant has not complied with its obligations under this Consent Decree, the EEOC may review the relevant documents, reports, and information provided to the Independent Monitor under paragraphs 41-44 and upon which the Independent Monitor relied to determine that discrimination or non-compliance occurred.

47.     The EEOC may communicate with the Independent Monitor as needed with respect to the Independent Monitor's reports provided under paragraphs 45 above to obtain clarification as to the Independent Monitor's reports or findings.  The EEOC may obtain the data or information relied upon by the Independent Monitor in issuing his reports in accordance with paragraph 46 , above.

48.     Neither party may order the Independent Monitor to perform his duties in any particular way.

Reporting and Investigation Requirements for Discrimination Complaints

49.     Defendant will, within two business days of the receipt of any complaint (formal or informal, written or oral, internal or external) of discrimination or retaliation from any employee or applicant, notify the Independent Monitor and provide, to the extent available to the Defendant, the name, home address, telephone number, and email address of the complainant; the name of the alleged discriminator; the name, home address, telephone number, email address of any witnesses; and a summary of the complaint. Defendant must provide any additional information or documentation within its custody, possession, or control requested by the Independent Monitor.

50.     Within five business days of receipt of a complaint of discrimination or retaliation, the Independent Monitor may commence an investigation that may include, but is not limited to, conducting witness interviews and reviewing Defendant's records. All such investigation activities will not unreasonably interfere with the operation of Defendant's business and will be scheduled at reasonable times and upon reasonable advance written notice to Defendant.  Defendant will not interfere with such investigation.

51.     Every four months beginning four months after entry of the Consent Decree, the Independent Monitor will provide to the EEOC a written report: (1) detailing all complaints of discrimination or retaliation received during the period; (2) describing any steps taken to investigate each complaint; and (3) identifying the steps the Independent Monitor intends to take to further the investigation.  The written report will also include a copy of any findings or resolutions reached concerning any investigation concluded during the period.

52.     The Independent Monitor will retain all documents and reports related to any complaint received or investigation conducted.  The EEOC may request materials related to a complaint or investigation at any time.

### Recordkeeping and Retention

53.     Within seven days of entry of this Consent Decree by the Court, Defendant will adopt a document retention policy consistent with its recordkeeping obligations pursuant to Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c); Section 107(a) of the ADA, 42 U.S.C. § 12117(a), incorporating by reference Section 709(c) of Title VII; Section 7(a) of the ADEA, 29 U.S.C. § 626(a); and 29 C.F.R. Part 1602 *et seq.* The Retention Policy is attached as Exhibit F. The Retention Policy will not be modified without EEOC approval. Attachment of the Retention Policy to this Consent Decree is not a representation by the EEOC that Defendant has been or currently is in compliance with the aforementioned provisions.

54.     Defendant agrees to maintain any such records as are necessary to demonstrate their compliance with this Consent Decree and Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c); Section 107(a) of the ADA, 42 U.S.C. § 12117(a), incorporating by reference Section 709(c) of Title VII; Section 7(a) of the ADEA, 29 U.S.C. § 626(a); and 29 C.F.R. Part 1602 *et seq.* and to verify that the reports submitted pursuant to this Consent Decree are accurate.

55.     Defendant further agrees to keep employee and applicant medical and disability-related information and documents separate, and not to commingle such information and documents with other documents and information in personnel and applicant files.

## **MONETARY RELIEF**

56.     Within 45 days of entry of this Consent Decree, Defendant will pay or cause to be paid a total of $550,000. The $550,000 may  initially be provided to  American Legal Claims

Services LLC ("Claims Administrator") in a single check to be deposited into an interest-bearing escrow account.

57.     Within fifteen days of entry of this Consent Decree, American Legal Claims Services LLC ("Claims Administrator") will establish a segregated, interest-bearing Qualified Settlement Fund ("Claims Fund") under Section 468(b) of the Internal Revenue Code

58.     Upon receipt of the $550,000 referenced in paragraph 56, above, the Claims Administrator  will deposit $475,000 into the Claims Fund. The $475,000 will be used to provide monetary awards to Charging Party Tammi Iser and a class of aggrieved individuals allegedly discriminated against (collectively with Iser, "Claimants").

59.     Upon receipt of the $550,000 referenced in paragraph 57, above, the Claims Administrator  will deposit in a separate escrow account $75,000 to cover the anticipated expenses of the Independent Monitor for the duration of the Consent Decree.  Any expenses the Independent Monitor incurs beyond the funds placed in escrow will be the sole responsibility of Defendant.

60.     Within two days of making or causing to be made the deposit made under paragraph 56 above,  Defendant will provide the EEOC with notice.

61.     Attached as Exhibit G to this Consent Decree is a list of required gross payments to specific Claimants to be made by the Claims Administrator.  Half of each gross payment will be treated as compensatory damages and half will be treated as backpay. Defendant may not challenge any part of Exhibit G.

62.     The EEOC will work with the Claims Administrator to provide notice to Claimants of their respective awards; confirm or obtain any information needed to effect

payment (including Social Security Numbers or other Taxpayer Identification Numbers) ; and obtain the required signed release, as discussed in paragraphs 65 and 66, below.

63.     The EEOC must approve any communication to Claimants.

64.     In order to receive payment, Claimants will be required to sign a release in the form attached hereto as Exhibit H and provide the signed release to the Claims Administrator, who will in turn provide a copy of all signed releases to Defendant.

65.     Within 21 days of receipt of an executed limited release, the Claims Administrator will mail the required checks and IRS forms to that Claimant.  Claimants will not be entitled to receive a check unless and until the Claims Administrator has received the release in the form attached hereto as Exhibit H.

66.     The Claims Administrator will send checks for compensatory damages and IRS form 1099 via certified or other trackable mail to the Claimants identified in Exhibit G

67.     The Claims Administrator will send checks for backpay and IRS form W-2 via certified or other trackable mail to the Claimants identified in Exhibit G.  The Claims Administrator will make all required withholdings for applicable federal, state, and local income taxes and the Claimant's share of federal payroll taxes.  Defendant will be responsible for (and such amounts will not be deducted from this payment) any tax obligation Defendant incurs from of these payments, including the employer's share of federal payroll taxes, but, as noted above, Defendant will not be responsible for the Claimant's federal, state, and local income taxes or for the Claimant's share of federal payroll taxes or other tax obligations.

68.     The Claims Administrator will provide regular reports to the EEOC and Defendant regarding its efforts to contact Claimants, its receipt of releases, the mailing of checks, and the depositing of checks by Claimants.  The Claims Administrator will provide

EEOC and Defendant with copies of checks, IRS 1099 forms, and IRS W-2 forms upon request and any other documentation, to the extent it exists, regarding withholdings for applicable federal, state, and local income taxes and the Claimant's share of federal payroll taxes.

<u>Remaining Funds</u>

69.     Under no circumstances will any portion of the Claims Fund described in paragraphs 57 and 58 above revert to Defendant or its insurer.

70.     If any of the funds are not initially distributed, remain unclaimed, cannot be paid due to the Claimant's failure to sign the limited release described in paragraphs 62 and 64-65 and Exhibit H, are returned for any reason, or are unable to be accepted by the person designated to receive them, the EEOC will  submit to the Court for approval a list reflecting additional amounts from the Claims Fund to be paid to certain Claimants designated by EEOC ("Proposed Payment List").

71.     The EEOC may submit multiple Proposed Payment Lists within one year of entry of this Decree. Defendant may not challenge the Proposed Payment Lists in any way.

72.     Following the Court's approval or modification of a Proposed Payment List, the EEOC will provide the Claims Administrator with the Proposed Payment List and work with the Claims Administrator to obtain any additional documents or information needed to effect payment.

73.     All payments pursuant to the Proposed Payment Lists will proceed in the manner set forth in paragraphs 62 to 68 above.

<u>References Provided to Claimants</u>

74.     Defendant agrees to answer any and all inquiries by prospective employers regarding Charging Party or any other Claimant by informing the prospective employer only of

20

the dates of employment, position(s), and compensation. Defendant will not mention in response to any inquiry by a current prospective employer this action, or any other matter related to this action or the underlying charge of discrimination to prospective employers enquiring about Charging Party's or any other Claimant's employment with Defendant.

75.     Defendant further agrees not to directly or indirectly, make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Charging Party or any other Claimant.

## MISCELLANEOUS PROVISIONS

76.      Except as otherwise provided herein, the parties will bear their own expenses, attorneys' fees, and costs.

77.     When this Consent Decree requires a certification by Defendant of any fact(s), such certification must be made under oath or penalty of perjury by an officer or management employee of Defendant.

## DURATION OF THE CONSENT DECREE

78.     This Consent Decree will remain in effect for three years from entry. The Consent Decree will not expire against any signatory while any enforcement action is pending against that signatory.  If Defendant is not in compliance with any sections of this Consent Decree prior to its expiration, the EEOC may apply to the Court for an extension of this Consent Decree or other appropriate relief, if any. The EEOC must provide Defendant with fourteen-days' notice before moving for an extension of this Consent Decree and Defendant will be provided an opportunity

to oppose such extension. Provided there is no extension of this Consent Decree by the Court, the Consent Decree and all of its terms will expire three years from its entry by the Court

79.      The Court will retain jurisdiction over this action for all purposes including, but not limited to, the entering of all orders, judgments, and decrees as necessary to implement the relief provided herein.  Upon signature and approval by the Court, the matter may be administratively closed but will not be dismissed.

## SIGNATURES

80.      Each signatory to this Decree certifies that each is fully authorized to execute this Decree and to bind the parties on whose behalf each signs.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

STAFFING SOLUTIONS,
OF WNY, INC.

Jeffrey Burstein
Regional Attorney

Kathleen Faulhaber
on Behalf of Staffing
Solutions of WNY, Inc.

Nora E. Curtin
Supervisory Trial Attorney

Daniel Seltzer
Trial Attorney

Renay M. Oliver
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

22

SO ORDERED this 30th day of September, 2022.

_____
The Honorable Lawrence J. Vilardo
United States District Judge

**LIST OF EXHIBITS TO CONSENT DECREE**

Exhibit A-Notice of Resolution of EEOC Complaint for Posting at Staffing Solutions

Exhibit B-Statement to be included in Staffing Solutions' Application Form and in package provided to Applicants after interview

Exhibit C-Letter to Clients

Exhibit D-Voluntary Self Identification Package

Exhibit E-Non Discrimination Policy

Exhibit F-Document Retention Policy

Exhibit G-EEOC's list of payments made to Claimants

Exhibit H-Release to be signed by Claimants

**EXHIBIT A-NOTICE**



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
(929) 506-5270
TTY (212) 336-3622
General FAX (212) 336-3625

## NOTICE OF LAWSUIT AND RESOLUTION

This Notice is being posted pursuant to a Consent Decree entered in resolution of a lawsuit brought by the Equal Employment Opportunity Commission ("EEOC") against Staffing Solutions of WNY, Inc. in federal court in Buffalo, New York.  In its lawsuit, the EEOC alleged that Staffing Solutions discriminated against applicants and employees on the bases of race, sex, age, and perceived or actual disability. Defendant denies liability and entered into the Consent Decree without admitting liability so as to settle the lawsuit brought against it by the EEOC.

Federal law prohibits employers from discriminating against applicants and employees based on national origin, religion, race, color, sex, age, disability, or genetic information.  Defendant, and its managers, officers, and agents, will support and comply with Federal law prohibiting discrimination and retaliation against any employee or applicant for employment.

Pursuant to the Consent Decree and for the three-year duration of the Consent Decree, Defendant:

1.  Is enjoined from discrimination against any applicant or employee because of their race, sex (including pregnancy), age, disability, or because of any other unlawful basis;

2.  Is enjoined from retaliation against any person who exercises their rights under federal anti-discrimination laws;

3.  Has retained Joseph Saeli, Esq. as an Independent Monitor to receive and investigate complaints of discrimination and ensure Staffing Solutions does not engage in discriminatory hiring or placements;

4.  Has adopted an anti-discrimination policy to provide various reporting options and other protections, and to require that all instances of discrimination and retaliation be fully investigated and remedied;

5.  Will provide all current and future managers and employees with training on federal laws prohibiting employment discrimination;

6.      Will permit the Independent Monitor to monitor compliance with the Consent Decree;

7.      Will report to the Independent Monitor regarding its hiring and placement practices and complaints of discrimination;

8.      Have posted and distributed this Notice and any notices required by law;

9.      Will notify all current and future clients of its commitment to compliance with federal anti-discrimination laws; and

Should you have any complaints or questions regarding employment discrimination, contact the EEOC at:

> Equal Employment Opportunity Commission
> (800) 669-4000
> Website: www.eeoc.gov

Dated: _____

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE ALTERED OR DEFACED BY ANYONE OR COVERED BY ANY OTHER MATERIAL**

This Notice must remain posted for three (3) years from the date shown above and must not be altered, defaced, or covered by any other material.  Any questions concerning this Notice or compliance with its provisions may be directed to the Equal Employment Opportunity Commission at the number listed above.

**EXHIBIT B- JOB APPLICATION STATEMENT**

Staffing Solutions is an equal opportunity employer.  We do not discriminate on the basis of age race, color, religion, national origin, disability, sex/pregnancy, gender, sexual orientation, or any other status protected by law.  If you believe that you were not hired or placed because of race, sex (including pregnancy), age, disability, or because of your membership in any of the other above protected categories, or that you were placed in certain positions or denied opportunities because of your membership in one of those categories, please contact the court-appointed Independent Monitor, Joseph Saeli, Esq., at jsaeli@colliganlaw.com or (716) 885-1150.

**Exhibit C—Letter to Clients**

Dear Valued Client:

      As you know, during the past several years Staffing Solutions has been involved in litigation with the Equal Opportunity Employment Commission ("EEOC") in which the EEOC has contended that certain employment practices by Staffing Solutions violated various federal anti-discrimination laws. While Staffing Solutions denies that it engaged in any discrimination, in order to put this matter to rest, Staffing Solutions has entered into a settlement with the EEOC, which requires Staffing Solutions to accept the issuance of a Consent Decree.

      As part of Staffing Solutions' settlement with the EEOC and as required by the terms of the Consent Decree, I have been asked to remind you that both Staffing Solutions and its clients are obligated under federal law to provide equal opportunities to employees and applicants in making employment-related decisions by ensuring that such decisions are made without regard to gender, pregnancy, race, color, religion, national origin, ancestry, physical or mental disability, or age.  This includes decisions relating to hiring, promotions, transfers, discipline and terminations of employment.

      I look forward to continuing to work with you in the future in meeting your staffing needs.

                Sincerely,

                _____

                Kathy Faulhaber

EXHIBIT D—Self-Identification Survey

# Voluntary Self Identification Form

Staffing Solutions is an Equal Opportunity Employer.  To assist us in complying with certain governmental recordkeeping and reporting requirements Staffing Solutions  invites applicants to **_voluntarily_** self-identify by reporting their age, race, gender, and disability status.  This information will be kept confidential and is not part of the employment application. You will not be penalized or denied employment for choosing not to provide any or all of the below information.

A copy of this form, or the information contained therein, will be provided by Staffing Solutions to Joseph Saeli Jr., a court-ordered Independent Monitor.

Name _____ Date _____

           Last                       First                M.I.

Position Applied for _____

**Age**
- ☐ **Under 40 years old**
- ☐ **40 years old or older**

**Gender**
☐ Male    ☐ Female

**Ethnic Category**

☐ **White** - A person having origins in any of the original peoples of Europe, North Africa, or the Middle East

☐ **Black or African American** - A person having origins in any of the Black racial groups of Africa

☐ **Hispanic or Latino** - A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race

☐ **Asian** - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam

☐ **American Indian or Alaskan Native** - A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community recognition

☐ **Native Hawaiian or Other Pacific Islander** - A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands

☐ **Two or More Races** - All persons who identify with more than one of the above races.

**Disability/Pregnancy Status**

I am currently pregnant.

☐ Yes, I Have A Disability, Or Have A History/Record Of Having A Disability

☐ No, I Don't Have A Disability, Or A History/Record Of Having A Disability

☐

☐

**Decline Self-Identification**
☐      I do not wish to Self-Identify

**EXHIBIT E—Non-Discrimination Policy**

**EQUAL EMPLOYMENT**

It is the established policy of Staffing Solutions to provide equal employment opportunities to all qualified persons and to administer all aspects and conditions of employment without regard to:

- Race

- Color

- Age

- Sex

- Sexual Orientation

- Gender

- Religion

- National Origin

- Pregnancy

- Physical or mental disability

- Military or veteran status

- Marital or Familial Status

- Genetic Predisposition or Carrier Status

- Domestic violence or stalking victims' status

- Reproductive Health Decision Making

- Child or spousal support withholding

- Wage garnishment or consumer debt

• Any other protected class, in accordance with applicable federal, state, and local laws

The Company takes allegations of discrimination, harassment and retaliation very seriously and will promptly investigate all complaints of discrimination and harassment. Employees who believe they have been subject to unlawful discrimination, harassment or retaliation are provided with several avenues for reporting any concerns or complaint which are described in detail in below in the section of this policy entitled Discrimination and Harassment Complaint Procedures.  All complaints of discrimination and harassment will be taken seriously and promptly and thoroughly investigated.  Where it is determined that inappropriate conduct occurred, corrective action, up to and including termination of employment, will be implemented. The law protects employees who make complaints of unlawful discrimination or otherwise oppose such conduct from retaliation.  The company will not retaliate against any employee complaining of discrimination or harassment and will not tolerate retaliation by any of its employees.   Equal employment opportunity includes, but is not limited to, decisions relating to hiring,  training, promotion, demotion, discipline, transfer, leaves of absence, and termination.

## GENDER/SEXUAL ORIENTATION  DISCRIMINATION
## AND  SEXUAL HARASSMENT

Unlawful discrimination based on gender and sexual harassment is prohibited behavior and against company policy. The company is committed to providing equal opportunity in the selection of candidates for employment and in providing a work environment free of inappropriate and disrespectful behavior, intimidation, communications and other conduct directed at an individual because of their sex sexual orientation, and gender identity or

expression, including the status of being transgender, all of which can constitute sexual harassment.

Under this policy hiring, promotion or other decisions will be made based on each applicant's and/or employee's qualifications, and without regard to gender including whether the employee is pregnant, sexual orientation or gender identity.  In addition, the company does not tolerate any harassment of any applicant or employee based on his/her  gender, sexual orientation, or gender identity.

Applicable federal and state law defines sexual harassment as unwanted sexual advances, requests for sexual favors, or visual, verbal, or physical conduct of a sexual nature when: (1) submission of the conduct is made a term or condition of employment; or (2) submission to or rejection of the conduct is used as basis for employment decisions affecting the individual; or (3) the conduct  has the purpose or effect of unreasonably interfering with the employees work performance or creating an intimidating, hostile or offensive work environment. The following list contains examples of prohibited conduct. They include, but are not limited to:

- Unwanted sexual advances;

- Offering employment benefits in exchange for sexual favors;

- Making or threatening reprisals after a negative response to sexual advances;

- Visual conduct such as leering, making sexual gestures, or displaying sexually suggestive objects, pictures, cartoons, or posters;

- Verbal conduct such as making or using derogatory comments, epithets, slurs, sexually explicit jokes, or comments about any employee's body or dress;

- Verbal abuse of a sexual nature, graphic verbal commentary about an individual's body, sexually degrading words to describe an individual, or suggestive or obscene letters, notes, or invitations;

- Physical conduct such as touching, assault, or impeding and/or blocking movements; and

- Retaliation for reporting harassment or threatening to report harassment.

Sexual harassment can occur between any individuals, regardless of their sex or gender. In NY the law protects employees, paid or unpaid interns, and non-employees, including independent contractors, and those employed by companies contracting to provide services in the workplace. Harassers can be a supervisor, a subordinate, a co-worker or anyone in the workplace including an independent contractor, contract worker, vendor, client, customer or visitor.

Unlawful sexual harassment is not limited to the workplace itself. It can occur while employees are traveling for business or at employer sponsored events or parties. Calls, texts, emails, and social media usage by employees can constitute unlawful workplace harassment, even if they occur away from the workplace premises, on persona devices or during on-working hours.

## OTHER TYPES OF DISCRIMINATION AND HARASSMENT

In addition to discrimination and harassment based on gender, the company is also committed to providing equal opportunity in both the selection of candidates for employment and in providing a work environment free of inappropriate conduct without regard to race, color, religion, national origin, ancestry, physical or mental disability, veteran status, age or any other basis protected under local, state, or federal law. Under this policy, therefore, hiring, promotion

or other decisions will be made based on each applicant's and/or employee's qualifications, and without regard to an individual's race, color, religion, national origin, ancestry, physical or mental disability, veteran status, age, or any other basis protected under local, state, or federal law.   In addition, the company does not tolerate any harassment of any applicant or employee based on an employee's protected status. Examples of prohibited conduct includes:

- • Verbal conduct such as threats, epithets, derogatory posters, photographs, cartoons, drawings, or gestures based upon or implicating an individual's protected status;

- • Physical conduct such as assault, unwanted touching, or blocking normal movement; and

- • Retaliation for reporting harassment or threatening to report harassment.

## RETALIATION

It is against company policy and unlawful to retaliate in any way against anyone who has lodged an internal or external harassment complaint, reported sexual harassment they have observed, encouraged a co-worker to report harassment, expressed a concern about harassment including sexual harassment or cooperated in a harassment investigation. Therefore, the initiation of a complaint in good faith, will not under any circumstances be grounds for disciplinary action even if the alleged harassment does not rise to the level of the law.

## DISCRIMINATION AND HARASSMENT COMPLAINT PROCEDURES

The complaint procedure provides for an immediate, thorough and objective investigation of any claim of unlawful or prohibited discrimination or harassment, appropriate disciplinary action against one found to have engaged in prohibited discrimination or harassment and appropriate remedies will be provided for any victim of discrimination or harassment.

Anyone who has been subjected to the conduct prohibited under this policy while working for a client, or who has knowledge of such conduct, can report the conduct directly to the client supervisor, the client's HR Department, by calling either Kathy Faulhaber or Ryan Faulhaber with Staffing Solutions at the following number (716) 551-0242, or by calling or emailing Joseph Saeli Jr., a court-ordered independent monitor responsible for receiving and investigating such complaints, at jsaeli@colliganlaw.com and (716) 885-1150.

Anyone who has been subjected to the conduct prohibited under this policy by an employee or manager of Staffing Solutions—for example, if you believe that you were not hired or placed because of race, sex (including pregnancy), age, disability, or because of your membership in any of the other above protected categories, or that you were placed in certain positions or denied opportunities because of your membership in one of those categories— should contact Joseph Saeli Jr., a court-ordered independent monitor responsible for receiving and investigating such complaints, at jsaeli@collaganlaw.com and (716) 885-1150. Complaints regarding harassment or retaliation may be oral or in writing. A form for making a complaint of discrimination or harassment, as required by New York law, is included as Addendum A. Additional copies of that form may be obtained by contacting Kathy or Ryan Faulhaber at Staffing Solutions.

All reported incidents of prohibited discrimination or harassment will be promptly investigated. That investigation will include interviewing the person making the complaint, any witnesses to the reported conduct, and the accused, collecting and preserving any documents or other physical evidence. During the investigation, confidentiality will be preserved to the fullest extent possible without compromising the company's ability to conduct a good faith and thorough investigation.

The person responsible for conducting the investigation will create a written documentation of the investigation that will include a list of all documents reviewed and a summary of the relevant documents; a list of names of those interviewed with a summary of their statements; a timeline of events; a summary of any prior relevant incidents (reported or unreported); the basis for the determination that was made and the final resolution and any corrective action taken.

When the investigation is complete, a determination regarding whether any harassing discriminatory or otherwise inappropriate conduct occurred.  The results of the investigation will be communicated to the employee who complained and the accused harasser.

If the company determines that prohibited discrimination or harassment has occurred, the company will take effective remedial action commensurate with the circumstances. Appropriate action will also be taken to deter any future harassment. If a complaint of prohibited harassment is substantiated, appropriate disciplinary action, up to and including discharge, will be taken.

In addition to the complaint procedures outlined above, **New York law also requires** that we advise you to pursue legal remedies and report harassment to the following governmental entities:

**New York State Division of Human Rights (DHR)**

The Human Rights Law (HRL), codified as N.Y. Executive Law, art. 15, § 290 et seq., applies to employers in New York State with regard to sexual harassment, and protects employees, paid or unpaid interns and non-employees regardless of immigration status. A

complaint alleging violation of the Human Rights Law may be filed either with DHR or in New York State Supreme Court.

Complaints with DHR may be filed any time **within three years** of the harassment. If an individual did not file at DHR, they can sue directly in state court under the HRL, **within three years** of the alleged discrimination. An individual may not file with DHR if they have already filed an HRL complaint in state court.

You do not need an attorney to file a complaint with DHR, and there is no cost to file with DHR. DHR will investigate your complaint and determine whether there is probable cause to believe that discrimination has occurred. Probable cause cases are forwarded to a public hearing before an administrative law judge. If discrimination is found after a hearing, DHR has the power to award relief, which varies but may include requiring your employer to take action to stop the harassment, or redress the damage caused, including paying monetary damages, attorney's fees and civil fines.  You can contact DHR at (888) 392-3644 or visit dhr.ny.gov/complaint for more information about filing a complaint. The website has a complaint form that can be downloaded, filled out, notarized and mailed to DHR. The website also contains contact information for DHR's regional offices across New York State.

### United States Equal Employment Opportunity Commission (EEOC)

The EEOC enforces federal anti-discrimination laws, including Title VII of the 1964 federal Civil Rights Act (codified as 42 U.S.C. § 2000e et seq.). An individual can file a complaint with the EEOC anytime within 300 days from the harassment. There is no cost to file a complaint with the EEOC. The EEOC will investigate the complaint and determine whether

there is reasonable cause to believe that discrimination has occurred, at which point the EEOC will issue a Right to Sue letter permitting the individual to file a complaint in federal court.

Contact the EEOC by calling 1-800-669-4000 (1-800-669-6820 (TTY)), visiting their website at www.eeoc.gov or via email at info@eeoc.gov

If an individual filed an administrative complaint with DHR, DHR will file the complaint with the EEOC to preserve the right to proceed in federal court.

**Local Protections**

Many localities enforce laws protecting individuals from sexual harassment and discrimination. An individual should contact the county, city or town in which they live to find out if such a law exists.

**Contact the Local Police Department**

If the harassment involves physical touching, coerced physical confinement or coerced sex acts, the conduct may constitute a crime. Contact the local police department.

## AMERICANS WITH DISABILITIES ACT POLICY STATEMENT

The Company is committed to complying with all applicable provisions of the Americans with Disabilities Act ("ADA"). It is the Company's policy not to discriminate against any qualified employee or applicant with regard to any terms or conditions of employment because of such individual's disability or perceived disability so long as the employee can perform the essential functions of the job with or without a reasonable accommodation. Consistent with this policy of nondiscrimination, the company will provide reasonable accommodations to qualified individuals with a disability, as defined by the ADA, who make the company aware of their disability and their need for an accommodation or whose disability and need for accommodation

is obvious, provided that such accommodation does not constitute an undue hardship on the Company.

Employees with a disability who believe they need a reasonable accommodation to perform the essential functions of a job which they have applied for or which they have been offered should notify either Kathy or Ryan Faulhaber of the need for an accommodation.  If an Employee, after accepting an assignment with a client, believes that need a reasonable accommodation to perform the essential functions of the job may contact their supervisor or HR Department for the Client or by contacting or either Kathy or Ryan Faulhaber at Staffing Solutions.

The ADA does not require the company to provide employees with the accommodation of their choice, to reallocate essential job functions, or to provide personal use items (e.g., eyeglasses, hearing aids, wheelchairs, etc.). It requires only that the company provide a qualified individual with a disability a reasonable accommodation that will permit them to perform the essential functions of their job.

## BACKGROUND/DRUG TESTS

Some of the company's Clients offer positions which require that Staffing Solutions conduct a background check and/or a conduct a pre-employment drug test.   For these positions, Staffing Solutions, prior to making an offer of employment or after making a conditional offer, may conduct a job-related background check and/or drug-test.  All background checks and/or drug tests are conducted by a third-party provider. The background check may consist of prior employment verification, professional reference checks, education confirmation, and / or criminal record and credit checks, as permitted by law.   You will be provided the results of any background check and/or drug test and will have the opportunity to correct any inaccurate

40

information, or in the case of a positive drug test, to provide information documenting that any prohibited substance for which you tested positive was prescribed by a licensed health care provider.  All offers of employment are contingent upon a satisfactory background check and/or drug test.

**EXHIBIT F- Records Retention Policy**

**It is the policy of Staffing Solutions to retain documents according to the following schedule. All managers and other internal employees will adhere to this schedule in determining whether documents or other records should be kept.**

**Resumes and Inquiries: Keep the following documents for one year:**

   The job posting or advertisement
   Resume/Inquiry

**Individuals Who Come In for Interview But Are Not Worked/Hired:    Keep the following documents for one year from date of interview:**

   Staffing Solution Application, including resume if provided
   Interview Notes
   Pre employment test administered by Staffing Solutions
   Record from outside drug testing company including notices to employees and any response
   Any offers of employment made and reasons declined by applicant

**Individuals Worked/Hired By Staffing Solutions:   Keep the following documents six years from last date of employment:**

   Staffing Solution Application, including resume if provided
   Interview Notes
   Pre employment test administered by Staffing Solutions
   Record from outside drug testing company including notices to employees and any response
   Location and Dates of each placement
   Hourly Rate
  Only to the extent provided by client keep records of the following client decisions: (a) disciplinary actions; (b) reasons for  end of assignment, and/or termination of assignment
   Staffing Solutions' records of any determination to close and/or not work an employee or discipline administered by Staffing Solutions

**Payroll Records:  Keep the following documents for six years from last date of employment:**

Employee time records
Payroll reports by employee/by pay period

**Accommodation/FMLA Requests Made to Staffing Solutions:  Keep the following documents for six years from last date of employment or date of request:**

Requests for Accommodation/Leave
Response to Request including any accommodation/leave granted
Documentation provided to support request (to be maintained in secure file and access limited to managers

**Worker's Compensation Records:   Keep the following records for six years from the last date of employment or end of WC Claim:**

Accident/Injury Report
Claim Forms
Any other documentation that Staffing Solutions may receive from its compensation carrier

**EXHIBIT G-LIST OF PAYMENTS TO CLAIMANTS**

| Claimant Name | Gross Payment |
|---|---|
| Alma Abram | $2,500 |
| Mustafa Abucar | $1,500 |
| Shaimika Adams | $1,500 |
| Shurland Alexander | $1,500 |
| Michael Amos | $2,500 |
| Antonio R. Anderson | $1,000 |
| Arianna Anderson | $2,500 |
| Ericka L. Anderson | $2,500 |
| Jeffery Anderson | $1,500 |
| Lola Anderson | $1,500 |
| Whitney Anderson | $1,500 |
| Justin D. Arrington | $2,500 |
| Fredrick Avino | $2,500 |
| Nick Azzarelli | $2,500 |
| Patience Banuna | $1,500 |
| Sunday Banuna | $1,000 |
| Javon Barnes | $1,500 |
| Jamika Barron | $2,500 |
| Christine Batcho | $2,500 |
| Jasmine K. Batcho | $1,000 |
| Davon Bates | $1,500 |
| Brandon Bellamy | $4,000 |
| Demetrien Bell-Bradley | $4,000 |
| Terry Benedict | $1,000 |
| Bradley J. Bethel | $2,500 |
| Avelle M. Bishop | $4,000 |
| Bilal Bland | $4,000 |
| Jessica D. Bobak | $1,000 |
| Shiana Bolden | $2,500 |
| Darrell Booze | $5,000 |
| Richard Bowden | $1,000 |
| Jacobi Boyd | $4,000 |
| Shmare J. Boyd | $1,500 |
| Harry R. Brooks | $1,500 |
| Briona Brown | $2,500 |
| William Burns, III | $4,000 |
| Nila Burroughs | $2,500 |

| | |
|---|---|
| Keith Cahill | $4,000 |
| Kim Calarco | $4,000 |
| Andrea Carmichael | $1,000 |
| Jermaine Caudle | $1,500 |
| Michael D. Chambers | $1,500 |
| Aqueelah Chamblis | $1,500 |
| Michael Cheatom | $2,500 |
| Hazel Clegatt | $4,000 |
| Leeland Coleman | $2,500 |
| Clarence Council | $2,500 |
| Clinton Dais | $2,500 |
| Dawn Darlak | $1,500 |
| Venessa Davis | $2,500 |
| Marcus Dean | $1,500 |
| Marquan Dean | $1,500 |
| Chester Debiaso | $2,500 |
| Tuaylataisha Dejesus | $1,500 |
| Beverly Dillon | $2,500 |
| Singer Doriscar | $2,500 |
| Jacqueline Drayton | $1,500 |
| Ashanti Dunbar | $1,500 |
| Corey Edwards | $1,000 |
| Aimee Falcon-Rivera | $1,500 |
| Danette Fernandes | $2,500 |
| Jason Ferrell | $1,000 |
| Natalie Ferrucci | $1,500 |
| Jabril Flunder | $1,500 |
| Vernon Gaines | $2,500 |
| Arus L. George | $1,000 |
| Michael A. Gibson | $1,500 |
| Ariauna Glowacki | $2,500 |
| Daniel Gonzalas | $1,500 |
| Tane Goodwin | $2,500 |
| Andrea S. Grayson | $2,500 |
| Whitney T. Hargrave-Jones | $4,000 |
| Talisha M. Haslam | $2,500 |
| Duane Hawkins | $2,500 |
| Nicole Hawkins | $2,500 |
| Jerome Hearn | $1,500 |
| Ann M. Heffron | $2,500 |
| Tatyanna Henley | $2,500 |

| | |
|---|---|
| Carisa M. Hill | $2,500 |
| Angelo M. Hillman | $2,500 |
| Christine E. Hoffmann | $2,500 |
| Leroy V. Horne | $2,500 |
| Tamika S. Horton | $2,500 |
| Glenn S. Hosken | $4,000 |
| Alize Houston | $2,500 |
| Arlene P Husband | $2,500 |
| Kenneth Inwood | $2,500 |
| Tammi Iser | $25,000 |
| Fatimah M. Jabbar | $4,000 |
| Antiqua J. Jackson | $1,500 |
| Steven R. Jaros | $2,500 |
| Deborah A. Jaszczak | $1,500 |
| Elijah Johnson | $1,500 |
| Keith Johnson | $4,000 |
| Tanisha Johnson | $2,500 |
| Anntwanette L. Jones | $1,500 |
| William L. Jones | $2,500 |
| Lindsay Kowalewski | $2,500 |
| Sheila D. Lanz | $2,500 |
| Jordan L. Lester | $1,500 |
| Dion W. Lewis | $2,500 |
| Dwane B. Lewis | $4,000 |
| Mary Logue | $2,500 |
| Haywood Love | $4,000 |
| Richard W. Ludwig | $4,000 |
| Sheryl B. Major | $2,500 |
| Noelle Marotta | $2,500 |
| Jajuan S. Marshall | $4,000 |
| Kyle McClain | $2,500 |
| Elone McCracken | $4,000 |
| Carlos L. Melendez | $2,500 |
| Deana S. Meza | $1,500 |
| Jerome Minor | $1,500 |
| Kalan A. Moore | $1,500 |
| Keshia Morgan | $2,500 |
| Nakia Moxley | $1,500 |
| April Muhammod | $1,500 |
| Angela D. Myles | $4,000 |
| Yashira Negron | $1,500 |

46

| | |
|---|---|
| Zawadi Nelson | $2,500 |
| Richard Orcutt | $1,500 |
| Brian M. Orsolits | $2,500 |
| Nancy Oryszak | $2,500 |
| Ayanna Pace | $2,500 |
| Melvin Payne | $2,500 |
| Darius L. Penn | $2,500 |
| Tiarra Peoples | $2,500 |
| Lamont C. Pinder | $2,500 |
| Allen Prather | $2,500 |
| Scott W. Randall | $2,500 |
| Richard G. Reimer | $2,500 |
| Justin Roche | $2,500 |
| Johanaa Rodriguez | $2,500 |
| Enrique Rosado | $4,000 |
| Erik Rose | $2,500 |
| Xavier A. Rouse | $2,500 |
| Shana A. Rowe | $4,000 |
| Shantrell R. Royster | $1,500 |
| Martin Russell | $1,500 |
| Mark Ruszala | $1,500 |
| Leon Sapp | $2,500 |
| Leon Scott | $2,500 |
| Christopher Simmons | $4,000 |
| Linda A. Simmons | $2,500 |
| Iyana Simpson | $2,500 |
| Larry Smalls | $2,500 |
| Sean K. Smith | $2,500 |
| Domonique Staley | $1,500 |
| Antionleeka Stephens | $2,500 |
| Lisa A. Thagard | $2,500 |
| Frank Thomas | $1,500 |
| Karlina Timmel | $4,000 |
| Latoya Trammell-Kelly | $1,500 |
| Mark Urbanski | $2,500 |
| Shaniqua Y. Walker | $2,500 |
| Christopher J. Walsh | $2,500 |
| Peter Walter | $2,500 |
| Ndongo L. Wane | $2,500 |
| Robert Wardzala | $2,500 |
| Jason H. Watson | $2,500 |

| | |
|---|---|
| Samantha Watters | $2,500 |
| Brian K. Watts | $1,500 |
| Melba Webster | $1,500 |
| Julie Westermeier | $1,500 |
| Michael Whalen | $2,500 |
| John White | $2,500 |
| Karl White | $1,500 |
| Laquita Williams | $1,500 |
| Latus Williams | $1,000 |
| Marlene Williams | $1,500 |
| Michael A. Williams | $1,500 |
| Teresa K. Williams | $2,500 |
| John Willis | $2,500 |
| Alfreda Wilson | $1,500 |
| Harold B. Young | $2,500 |
| Joseph G. Zedick, Jr. | $2,500 |

**EXHIBIT H - RELEASE**

In exchange for good and valuable consideration provided to me by Staffing Solutions of WNY, Inc. in connection with the resolution of *Equal Employment Opportunity Commission v. Staffing Solutions of WNY, Inc.,* Civ. No. 1:18-cv-00562-LJV-JJM, I waive my right to recover for any claims against Staffing Solutions of WNY, Inc. arising under Title VII of the Civil Rights Act of 1964 (race, race association, sex, pregnancy, and retaliation), the Age Discrimination in Employment Act, or Titles I and V of the Americans with Disabilities Act that I have or may have had against Staffing Solutions of WNY, Inc. prior to the date of this release and that were included in the claims alleged in the EEOC's complaint in *Equal Employment Opportunity Commission v. Staffing Solutions of WNY, Inc.*, Civ. No. 1:18-cv-00562-LJV-JJM or EEOC Charge No. 525-2016-00001.

Date: _____          Signature: _____

                                 Printed Name:_____